769 So.2d 389 (1999)
Deborah PEREZ, Appellant,
v.
Jorge M. PEREZ, Appellee.
No. 99-2182.
District Court of Appeal of Florida, Third District.
October 27, 1999.
Rehearing Denied December 7, 1999.
*390 Marsha B. Elser, Miami; Cynthia L. Greene, Miami, for appellant.
Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin, & Perwin, and Joel S. Perwin, Miami; Barranco, Kircher, Vogelsang & Boldt, and Kimberly L. Boldt, Miami, for appellee.
Before GERSTEN, SHEVIN, and SORONDO, JJ.

ON APPELLANT'S RENEWED MOTION TO PROHIBIT FURTHER INVOLVEMENT IN THESE APPELLATE PROCEEDINGS BY THE GUARDIAN AD LITEM AND/OR COUNSEL APPEARING ON BEHALF OF THE GUARDIAN AD LITEM
GERSTEN, Judge.
Appellant, Deborah M. Perez ("the Former Wife"), moves this Court to prohibit further involvement in these appellate proceedings by the Guardian ad Litem ("Guardian") and counsel appearing on behalf of the Guardian. We grant the Former Wife's motion and write further to discuss our serious concerns regarding the proceedings in this case, and to clarify that there is no statutory basis for a Guardian to file motions and a brief in a child custody appeal.[1]

Background Facts
The Former Wife and appellee Jorge M. Perez, ("the Former Husband") divorced in 1995. The Former Wife became primary residential parent of the parties' three minor children. In November of 1996, the parties agreed to a modification of the marital settlement agreement which specifically provided that the Former Wife could permanently relocate the children to the State of Utah in June of 1998.
In accordance with the 1996 agreement, the Former Wife purchased property in Utah, sold the home where she and the children were living in Miami, enrolled the children in a Utah school, and notified the Former Husband that she and the children would be relocating to Utah on June 18, 1998. However, two weeks prior to the scheduled and agreed upon departure date, the Former Husband filed a petition for modification of custody and attempted on an emergency basis to enjoin the Former Wife from relocating the children. The trial court denied the emergency motion determining the parties had agreed to the relocation, and the Former Wife and children moved to Utah.
Thereafter, pursuant to the parties' visitation agreement, the children spent the *391 summer of 1999 visiting with the Former Husband. The children having been enrolled in school in Utah, were to be returned to the Former Wife on August 21, 1999. During this agreed summer visitation, the Former Husband's petition for modification proceeded to trial. On July 30, 1999, the trial court entered an order modifying custody which is the subject of the main appeal.
The order split custody of the children, awarding custody of the two sons to the Former Husband, and custody of the parties' daughter to remain with the Former Wife.[2] The trial court's basis for splitting custody was the expressed preference of the two sons to live in Miami.
In its order, the court noted that the Guardian, Jacqueline Valdespino, testified there was a substantial change in circumstances in accord with the Former Husband's position. However, the court explained that it did not base its decision solely on the Guardian's testimony and report, because "part of her testimony at trial, as well as part of her conclusions in the Guardian Ad Litem's report ... are based partly on evidence which is clearly hearsay...."
On August 9, 1999, the Former Wife filed a Motion for Rehearing and Motion For Stay Pending Appeal which was denied by the trial court on August 20, 1999.[3] On August 23, 1999, the Former Wife filed her notice of appeal, and the next day filed an emergency motion seeking a stay of the trial court order, pending review in this Court.

Appellate Proceedings: A Barrage of Motions
On August 24, 1999, the Former Wife filed an Emergency Motion for Stay Pending Review and a Motion to Expedite Appeal. The Former Wife's motion for stay alleged a likelihood of success on the merits, and that the best interests of the children required maintaining the status quo. Pursuant to her agreement with the Former Husband, the Former Wife requested that the children resume school in Utah pending a final decision on appeal. This Court granted the Former Wife's motions ordering a stay pending appeal, and that the appeal be expedited.[4]
*392 This Court's order granting the stay resulted in a flood of motions, including an "Emergency Motion For Rehearing of Stay" filed by the Guardian advocating the Former Husband's position, and a "Notice of Appearance filed by an attorney on behalf the Guardian".[5] Not surprisingly, the Former Husband also filed an emergency motion for review of the order granting the stay.[6] On August 26, 1999, this Court denied both the Former Husband's and the Guardian's motions.
In accordance with this Court's mandate, the parties' two sons were sent to Utah on August 27, 1999. Three days later, on August 30th, the oldest son traveled to Miami where he was met at the airport by the Former Husband. This prompted the Guardian and the Former Husband to once again attempt to evade the stay order.
The Former Husband first filed an emergency motion in the trial court where the trial judge held an emergency hearing by telephone. The Former Husband told the trial court that the Guardian had "advised" him not to return the child to the Former Wife in Utah "before [the child sees] a professional counselor who can address his present state of mind." The trial court denied the motion finding that this Court had "effectively taken jurisdiction" over the matter, and ordered the child be returned to Utah to "comply with the law that is now the law of this case; i.e. the stay of these proceedings."
Instead of returning the child, however, both the Guardian and the Former Husband then decided to file motions again in this Court. The Guardian's emergency motion asked this Court to "relinquish jurisdiction" to the trial court to consider testimony as to possible emotional damage to the parties' eldest son. The Former Husband filed a similar motion entitled "Father/Appellee's Response in Support of Guardian Ad Litem's Emergency Motion to Relinquish Jurisdiction." Both the Former Husband's and the Guardian's motions were denied. Our denial of these motions was based upon what should be an obvious theoremthat parents and their minor children must obey court orders.
We are extremely concerned over this type of motion practice and caution counsel that "appellate motion practice is not a game of ping-pong in which the last lawyer to serve wins." See Sarasota County v. Ex, 645 So.2d 7 (Fla. 2d DCA 1994). To an even greater extent, we are extremely concerned with the impact of such behavior on children. Children should not be "played" as if in a game of ping-pong where the parent with the greater resources to serve the greatest number of motions wins.
Apparently, the Former Wife was also disturbed by the Guardian's involvement in the appellate proceedings, and moved to prohibit further involvement by the Guardian when she filed her response to the Guardian's second emergency motion on September 1, 1999. Although we denied the motion to prohibit at this time, see infra note 1, the denial was "without prejudice to renew if necessary." When the Guardian notified counsel for the Former *393 Wife of her intent to file an appellate brief with this Court, the Former Wife renewed her motion. For the reasons that follow, we grant the motion and prohibit further involvement of the Guardian in these appellate proceedings.

The Role of a Guardian Ad Litem In Child Custody Appellate Proceedings
The universally recognized function of a guardian ad litem in a custody dispute is to protect the best interests of children. Litigation involving custody issues can be particularly acrimonious and, unfortunately, children are particularly vulnerable to the harms commonly associated with hostility and conflict between parents. Guardians ad litem serve an important role, under limited circumstances, by acting as representatives of children and promoting society's interest in protecting children from the traumas commonly associated with divorce and custody disputes. See Scaringe v. Herrick, 711 So.2d 204 (Fla. 2d DCA 1998); Representing Children: Standards For Attorneys and Guardians Ad Litem In Custody or Visitation Proceedings (With Commentary), 13 J. Am. Acad. Matrim. Law. 1 (Summer 1995).
Once appointed, the powers and authority of a guardian ad litem include investigation, discovery matters, requesting necessary examinations of the parties or the child, obtaining impartial examinations and making recommendations to the court. See § 61.403 Fla. Stat. (1997). However, the duties and responsibilities of a guardian ad litem are not coextensive with those of an attorney. See Roski v. Roski, 730 So.2d 413 (Fla. 2d DCA 1999); see also Representing Children: Standards For Attorneys and Guardians Ad Litem In Custody or Visitation Proceedings (With Commentary), 13 J. Am. Acad. Matrim. Law. 1 (Summer 1995)(a guardian ad litem who is also an attorney should not combine the roles of counsel and guardian; Standard 3.1). In fact, Section 61.401, Florida Statutes (1997) specifically provides that the role of a guardian ad litem is "to act as next friend of the child, investigator or evaluator, not as attorney or advocate." See also, § 61.403 Fla. Stat. (1997).
And so we come to the crux of our concerns in these proceedings. Section 61.401 states that the guardian shall not act as an advocate and the Guardian's role is defined as limited to the specific litigation in which the Guardian is appointed. See Roski v. Roski, 730 So.2d at 413; Black's Law Dictionary 70 (6th ed.1990). Section 61.403 delineates the Guardian's powers and authority in the context of trial court proceedings. Nowhere is there any reference to appellate court proceedings in the statutes pertaining to the responsibilities of guardians ad litem.[7]
An appellate court is not a fact-finding court and there is simply no proper role for a Guardian at the appellate level. The Guardian fulfilled her statutorily defined duty when she completed her investigation and report to the trial courtthe court in which she was appointed.[8]
When attorneys are appointed to serve as guardians ad litem, their roles in the litigation process are significantly different than the roles they would otherwise assume as lawyers. Guardians ad litem are required to act in the best interests *394 of children even if this conflicts with the children's wishes, and must serve as independent fact investigators. The filing of motions and a brief by the Guardian in appellate proceedings conflicts with these functions, and violates the statutory prohibition against Guardians acting as advocates. See § 61.403 Fla. Stat. (1997); Scaringe v. Herrick, 711 So.2d at 204. Simply, the Guardian does not have a statutory right to appear in these proceedings. See Betz v. Betz, 254 Neb. 341, 575 N.W.2d 406, 410 (1998).[9]
The Guardian is further prohibited from appearing in these proceedings because she is not a proper party under Rule 9.020, Florida Rules of Appellate Procedure. It is well established that only parties (or their representatives) who have suffered an adverse affect in the lower tribunal cause of action are entitled to participate in an appeal. See Stas v. Posada, 760 So.2d 954 (Fla. 3d DCA 1999); Orange County, Fla. v. Game and Fresh Water Fish Commission, 397 So.2d 411 (Fla. 5th DCA 1981); Florida Civil Practice Guide, Vol. 6, § 143.03 (Lexis Publishing 1998).
Rule 9.020 defines the "parties" to an appeal as the "appellant" and the "appellee." Neither the Former Husband nor the Former Wife sought relief against the children. Further, minor children in a custody proceeding are not considered as "necessary parties" to the action. See Shienvold v. Habie, 622 So.2d 538 (Fla. 4th DCA 1993). Therefore, it is manifestly obvious that the minor children in this case are not "parties" to this proceeding, and thus the Guardian cannot appear on their behalf.
We are also disturbed by the Guardian's retention of an attorney to represent the Guardian in the appellate proceedings. As noted earlier, on the same day the Guardian filed her notice of appearance "on behalf of the children," an attorney filed a notice of appearance "on behalf of the Guardian." However, this attorney had never been appointed by any court to serve in any capacity in this case. There is no authority permitting a Guardian to retain counsel on behalf of herself in an appeal, where the Guardian is not a party to the proceedings, and where the Guardian is purportedly appearing on behalf of children who are also not parties in the appellate proceedings. See generally Betz v. Betz, 254 Neb. 341, 575 N.W.2d 406, 410 (1998)(a guardian who feels the need to retain an attorney should apply to the appointing court for permission).
In conclusion, there is no authority for a Guardian, or an attorney purportedly representing a Guardian, to submit motions or a brief in a child custody appeal.[10] Guardians *395 render an important service to the courts of this state, and we recognize that the lines separating the functions of an attorney as Guardian and an attorney as advocate, can become easily blurred. We hope the line has now become more distinct.
The Former Wife's motion is granted. The motions filed by the Guardian are stricken, and the Guardian, as well as counsel appearing on behalf of the Guardian, are prohibited from filing an appellate brief as a party in these proceedings.[11]
Motion to prohibit granted.
SHEVIN, Judge, concurs.
SORONDO, J. (specially concurring).
I agree with the majority that the guardian ad litem does not have standing to file a brief in this case. I write separately because I arrive at the same conclusion through a somewhat different analysis.
Deborah Perez (the mother), argues that the statute's mandate that the guardian "act as next friend of the child, investigator or evaluator, not as attorney or advocate," in section 61.401, Florida Statutes (1997), precludes the guardian from taking a position in this appeal because the guardian's arguments will place her in the role of advocate.[12] The mother further argues that the appointment of the guardian by the lower court does not authorize her to file pleadings in this Court.
Jorge M. Perez (the father), responds that the statute is ambiguous because although it sets forth the language cited above, the statute also makes the guardian a "party." This elevates the guardian to the same level as the other parties in the case, the father and the mother. As such the guardian has the right to file pleadings with this Court in furtherance of the best interest of the children.
When first passed by the Florida Legislature, section 61.401 Florida Statutes (Supp.1990), as pertinent here, read as follows:
Appointment of guardian ad litem.In an action for dissolution of marriage, modification, parental responsibility, custody, or visitation, if the court finds it is in the best interest of the child, the court may appoint a guardian ad litem to represent the child.
As relevant to the issues before us, section 61.403, Florida Statutes (Supp.1990), stated:
Guardians ad litem; powers and authority. A guardian ad litem when appointed shall act as a representative of the child and shall act in the child's best interest.
In 1994, the Legislature amended both statutes. Section 61.401 was amended to read:
Appointment of guardian ad litem.In an action for dissolution of marriage, modification, parental responsibility, custody, or visitation, if the court finds it is in the best interest of the child, the court may appoint a guardian ad litem to act as next friend of the child, investigator or evaluator, not as attorney or advocate. The court in its discretion may also appoint legal counsel for the child to act as attorney or advocate; however, the guardian and the legal counsel shall not be the same person.... The guardian ad litem shall be a party to any judicial proceeding from the date of the appointment until the date of discharge.

Ch. 94-204, § 3, Laws of Fla. (amending § 61.401, Fla. Stat. (1993))(emphasis added). *396 Section 61.403, as pertinent here, was also amended:
Guardians ad litem; powers and authority. A guardian ad litem when appointed shall act as next friend of the child, investigator or evaluator, not as attorney or advocate but shall act in the child's best interest.
Ch. 94-204, § 5, Laws of Fla. (amending § 61.401, Fla. Stat. (1993))(emphasis added).
In 1994, the legislature excised all language concerning the "representation" of the child, and included language specifically stating that the guardian was not to act as "attorney or advocate." The amended statute went on to provide that the trial court could appoint counsel for the child to serve that function. The legislature clearly intended that the function of the guardian be one of "next friend" to the child. This role includes the power to investigate and evaluate the case, and to make recommendations to the trial judge which are consistent with the best interest of the child. See § 61.403(5), (8), Fla. Stat. (1997). In short, the guardian's role is to discover, analyze and communicate facts to the judge which will assist the trial court in the performance of its duty to determine the best interest of children in divorce proceedings. The role of advocate for the child, the legislature reserved for counsel, which the court can appoint if it considers appropriate and necessary. The trial judge in this case did not appoint counsel.
The father's argument that the guardian's elevation to the status of "party" gives her the right to file pleadings in this Court is unpersuasive. First, it is clear that the guardian is not a party to this action in the strict and acknowledged sense of the word. In defining the word, Black's Law Dictionary 1122 (6th ed.1990) states:
"Party" is a technical word having a precise meaning in the legal parlance; it refers to those by or against whom a legal suit is brought, whether in law or equity, the party plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons; all others who may be affected by the suit, indirectly or consequently, are persons interested but not parties.
See also 59 Am.Jur.2d Parties § 7 (1987)(The word party or parties "designates the opposing litigants in a judicial proceedingthe persons seeking to establish a right and those upon whom it is sought to impose a corresponding duty or liability ..."). Under this definition the guardian in this case is not a party. Accordingly, the guardian is a "party" in this judicial proceeding only because the legislature has made her such. Because this status is created by statute it can be defined by statute, and the statutes in question do just that. The legislature first chose to limit the guardian's role as a "party" by forbidding her from acting in a certain way, i.e. as an advocate for the child. Next, in section 61.403(2), (3), and (6), the legislature required the guardian to petition the court and file pleadings only through counsela "true" party could do so pro se. Finally, the guardian does not become a party at the inception of the litigation or because she has a personal interest, she attains that status by judicial appointment and retains her identity as such only until discharged by the judge. Thus, although the legislature has created this special class of "party," it has also defined its limitations. As I read the statute, the guardian does not have a party's right to file pleadings in this Court because this will, mandatorily, require her to become an advocate.
The majority correctly observes that there is no role for the guardian to play in this Court because all factual issues and determinations have been fully developed below. This Court is in a position to read the record of the lower court, which contains all of the guardian's contributions to this lawsuit. A brief review of that record indicates that the guardian's position is the same as that of the father in this case and has been repeatedly and zealously expressed in both the lower court and this *397 Court. Indeed, the father relies heavily on the recommendations of the guardian. The guardian's presence in this appellate proceeding is therefore superfluous.
I do acknowledge that in certain cases the guardian may serve a valuable role on appeal. Usually, the guardian's recommendations will bolster the legal position of one of the parents. There are extraordinary cases, however, where the guardian's conclusions could be detrimental to both parents. I refer specifically to cases which contain issues concerning the parents' mental and emotional stability and cases involving domestic violence and/or child abuse. In such cases, a guardian could recommend that neither parent be awarded custody or that custody should be predicated upon a particular parent's participation in some type of psychological counseling. These cases may call for a guardian to file a brief in an appeal and this Court has the authority, which the majority has chosen to exercise in this case, to allow the guardian to appear as amicus curiae pursuant to rule 9.370 of the Florida Rules of Appellate Procedure.[13] I do not believe that this appeal calls for the guardian's participation.
NOTES
[1] Initially, we denied the Former Wife's motion to prohibit further involvement by the Guardian ad Litem. However, we cautioned in our ruling that the denial was "without prejudice to renew if necessary." At this stage of the proceedings, and during a flurry of emergency motions filed by the appellee, the Guardian had filed only two documents; one entitled "Guardian ad Litem's Emergency Motion for Rehearing of Stay" and one entitled "Guardian ad Litem's Emergency Motion to Relinquish Jurisdiction." Both were denied. Thereafter, the Guardian advised counsel for the Former Wife that a brief would be filed with this Court. The Former Wife then renewed her motion correctly observing that the Guardian intended to continue her wholly unauthorized and improper conduct.
[2] We note that the Former Husband's petition did not seek an award of split custody.
[3] The children had been enrolled in school in Utah for over a year, and the agreement provided that they were to be returned to the Former Wife on August 21st. In spite of the fact that the trial court's custody modification order had been suspended by the filing of the Former Wife's Motion for Rehearing, the Former Husband placed the children in school in Miami on August 18th. The children were not returned to the Former Wife, although the primary residence of the children remained with the Former Wife at the time the Former Husband enrolled them in school.
[4] This Court has authority to issue a stay under Rule 9.310(f), Florida Rules of Appellate Procedure, for the purpose of preserving the status quo during an appellate proceeding. See Hirsch v. Hirsch, 309 So.2d 47 (Fla. 3d DCA 1975). Once a stay is issued, the stay remains in effect until the appellate court mandate is issued. Rule 9.310(e), Fla. R.App. P. Factors which are considered by this Court in deciding whether to grant a stay include the moving party's likelihood of success on the merits, and the likelihood of harm should a stay not be granted. See State ex rel. Price v. McCord, 380 So.2d 1037 (Fla.1980).

During the course of the trial court proceedings, the children had been spending the summer with the Former Husband pursuant to the parties' visitation arrangements. The Former Husband did not return the children to the Former Wife, see supra note 3, and the Former Wife's motions contain facts and arguments indicating the Former Husband used this summer time as a means to manipulate the children's custody preference.
These facts and others were sufficient to establish the Former Wife had a likelihood of success on the merits. Coupled with our additional concerns regarding the children's schooling and their best interests, greater harm could result if the status quo were not preserved. See Offerman v. Offerman, 643 So.2d 1184 (Fla. 5th DCA 1994)(granting motion to stay temporary custody order). The facts raised by the Former Wife in support of her motion for a stay are most troubling, and we emphasize that this Court will not tolerate the improper use of visitation to manipulate a child's custody preference.
[5] The Notice of Appearance filed by the attorney stated she appeared "on behalf of the Guardian." A Notice of Appearance was also filed by the Guardian "on behalf of the minor children as Guardian Ad Litem."
[6] The Former Husband's motion has the rather lengthy title of "Emergency Motion For Rehearing and For En Banc Review of the Court's Ex Parte Order Granting the Wife's Motion to Stay Execution of a Child Custody Order, Without Waiting for the Husband's Response to That Motion." It incorrectly states that this Court's ruling constitutes an "ex parte judicial determination ... [which] is simply and flatly a violation of due process." There is no authority for an "en banc review" of an order issued by an appellate panel granting a stay pending review. More importantly, this Court has the inherent authority in its discretion to enter a ruling on a motion at any time, with or without a responsive pleading. In any event, the Former Husband's Emergency Motion was thoroughly considered at the time it was filed, and was denied by this Court.
[7] The Former Husband contends that Section 61.401 should be interpreted broadly as permitting guardians ad litem to participate in appellate proceedings, because this Section states the guardian "shall be a party to any judicial proceeding." We disagree for the reasons discussed throughout this opinion, and based upon our conclusion that the statute's reference to the guardian's status as a party in judicial proceedings, refers to the trial court proceedings in which the guardian was appointed. Our interpretation is consistent with the prohibition against guardian's acting as advocates contained within this very same section, and with common sense.
[8] We note that the Guardian's report is part of the appellate record and is at the disposal of both the Former Husband and the Former Wife in this proceeding.
[9] Although Betz involved the role of the guardian ad litem at the trial court level, we find many of the observations made by the court as to the proper function of the guardian relevant to our analysis. The Betz court noted that the primary function of a guardian is to provide the appointing court with necessary information by way of admissible evidence.

The court further cautioned that: "A guardian ad litem may be an attorney, but an attorney who performs the functions of a guardian ad litem does not act as an attorney and is not to participate in the trial in an adversarial fashion such as calling or examining witnesses or filing pleadings or briefs." Betz v. Betz, 575 N.W.2d at 409 (emphasis added). For purposes of this decision, we agree with Betz that it is improper for a guardian ad litem to file a brief in an appellate proceeding. Such participation on appeal violates the proscription against a guardian ad litem assuming the role of an advocate, and exceeds the bounds of the guardian's limited duties toward the appointing trial court.
[10] Nothing in this opinion shall be construed as affecting the role of a Guardian in other types of cases, or in the obvious situation where a child is the real party interest. See generally, S.A.P. v. State, Dep't of Health and Rehabilitative Servs., 704 So.2d 583, 585 (Fla. 1st DCA 1997)(minor may not bring action on her own behalf, and can only sue by and through a guardian ad litem, next friend or other duly appointed representative); Kingsley v. Kingsley, 623 So.2d 780, 784 (Fla. 5th DCA 1993)(guardian ad litem or next friend is required to represent a minor in a termination of parental rights case), review denied, 634 So.2d 625 (Fla.1994);Fla. R. Civ. P., Rule 1.210(b) (minors do not have legal capacity to initiate legal proceedings in their own names).
[11] The Guardian's motion for leave to file an amicus curiae brief pursuant to Florida Rule of Appellate Procedure 9.370 is granted. The Guardian is permitted to file an amicus curiae brief only.
[12] Needless to say, the guardian's position in this case is contrary to that of the mother.
[13] Even under these circumstances the guardian must seek leave of court to hire counsel. I join the majority in its conclusion that the guardian's sua sponte decision to hire counsel in this case, presumably at the expense of the parties, was highly improper.