814 So.2d 449 (2001)
M.C., The Mother, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee.
No. 4D01-1187.
District Court of Appeal of Florida, Fourth District.
November 21, 2001.
*450 Gary L. Pickett, West Palm Beach, for appellant.
Charles D. Peters, West Palm Beach, for appellee.
POLEN, C.J.
M.C., a fifteen year old minor, timely appeals the trial court's Order and Judgment of Involuntary Termination of Parental Rights with respect to her minor child, W.T.J. On appeal M.C. contends the Order should be reversed because she was not provided a guardian ad litem and, substantively, the Department of Children and Family Services (DCF) failed to present clear and convincing evidence supporting termination of her parental rights. We disagree on both points, and thus, affirm.
The DCF first learned of W.T.J.'s plight on August 22, 2000, when they received a report from St. Mary's Hospital concerning a one year old child who had been admitted with a broken left arm, possible skull fracture, bruises on his back, and an old rib fracture that appeared to be healing. The DCF subsequently filed an Order of Shelter in the interest of W.T.J. Meanwhile, W.T.J.'s mother, fifteen year old M.C., was interviewed regarding W.T.J.'s injuries. M.C. initially told the investigating officer that W.T.J. had been staying with her cousin for a few days preceding the hospital visit, and that she had been told W.T.J. had fallen in the bathtub. She further stated that she noticed his arm was swollen, red, and was making cracking noises, yet had waited three days to take him to the hospital, such visit prompted by an ear infection. Two days after the initial interview, M.C. was arrested and reinterviewed by the same officer. At this interview she recanted her previous story concerning her cousin and admitted that W.T.J. had actually been in her own personal care the entire time.
Further examination of W.T.J. revealed he also suffered from a torn membrane under his tongue, a ruptured right ear drum, an infection in both ears, and abrasions on his face. Due to the egregious nature of these injuries, the DCF filed an expedited termination of parental rights petition as to M.C., and to adjudicate W.T.J. dependent as to his father.
On February 26, 2001, an adjudicatory hearing was held on the DCF's expedited petition. M.C. was represented by counsel and testified on her own behalf; W.T.J.'s father did not take part in the proceedings. The court also received testimony from the investigating officer, the examining doctor, W.T.J.'s guardian ad litem, and a number of character witnesses on behalf of M.C. After receiving testimony, the trial court terminated M.C.'s parental rights, finding that W.T.J. had suffered an egregious constellation of injuries of great magnitude, which M.C. had the capacity to prevent yet knowingly failed to do so.
*451 M.C. contends the trial court erred in terminating her rights where she, a minor herself, was not represented by a guardian ad litem. We disagree. As a preliminary matter, this issue was never raised below where neither M.C.'s counsel nor the Office of the Guardian Ad Litem ever requested the appointment of a guardian for M.C. See § 744.3021, Fla. Stat. (1997); Fla. R. Juv. P. 8.215(a), 8.617(a). In effect, M.C. is arguing the trial court was required to appoint a guardian ad litem for her sua sponte. Florida Rule of Juvenile Procedure 8.215(b) provides:
The court shall appoint a guardian ad litem to represent the child in any proceeding as required by law ... (emphasis added); see also § 39.807(2)(a), Fla. Stat. (1999).
Read in conjunction with the relevant portions of the Rules of Juvenile Procedure, this court finds the use of the phrase "the child" in rule 8.215(b) does not include parents who also happen to be minors. See Fla. R. Juv. P. 8.210(a)("For the purpose of these rules the terms ... `parties' shall include the petitioner, the child, the parent(s) of the child...."). Nowhere do the Rules of Juvenile Procedure or the applicable statutes make special provisions for parents who also happen to be minors. Yet, the rules do provide that counsel shall be provided for indigent parents. Fla. R. Juv. P. 8.515(a).[1]
Here, M.C. was represented by counsel as required by the Rules of Juvenile Procedure. The duties of a guardian ad litem and an attorney are not co-extensive, and here M.C.'s interests were protected by court-appointed counsel. Roski v. Roski, 730 So.2d 413 (Fla. 2d DCA 1999); § 61.403, Fla. Stat. (1997); see also Perez v. Perez, 769 So.2d 389, 393 (Fla.3d DCA 1999)(holding the universally recognized function of a guardian ad litem is to protect the best interests of children, and guardians ad litem serve an important role, by acting as representatives of children and promoting society's interest in protecting children from the traumas commonly associated with divorce and custody disputes); Simms v. State, Dept. of Health & Rehabilitative Servs., 641 So.2d 957, 961 (Fla. 3d DCA 1994)(holding the inherent authority of the courts to protect children extends to the appointment of guardians ad litem for unrepresented children)(emphasis added). Here the dependency proceeding was brought on behalf of the abused child, W.T.J., and a guardian ad litem was appointed for "the child" in the proceeding as required by law.
M.C. further contends the Department failed to present clear and convincing evidence that M.C. had committed egregious abuse on W.T.J., and therefore, the Termination Order must be reversed. See, e.g., In re: K.C.C., 750 So.2d 38 (Fla. 2d DCA 1999). We disagree. Here, the DCF sought termination of M.C.'s parental rights on the grounds she had engaged in "egregious conduct." Section 39.806(1)(f), Florida Statutes (1999), permits a trial court to terminate a parent's rights when the parent engages in egregious conduct or has the opportunity and capability to prevent and knowingly fails to prevent egregious conduct that threatens the life, safety, or physical, mental, or emotional health of the child. "Egregious conduct" is defined as, "abuse, abandonment, neglect, or any other conduct of the parent or parents that is deplorable, flagrant, or outrageous by a normal standard of conduct. Egregious conduct may include an *452 act or omission that occurred only once but was of such intensity, magnitude, or severity as to endanger the life of the child." § 39.806(1)(f)(2), Fla. Stat. (1999)(emphasis added). The record before the trial court clearly established a pattern of physical abuse and ongoing neglect towards W.T.J. Further, the trial court found that M.C.'s testimony was not credible and that she had had the capacity to prevent the egregious conduct in question, i.e., the constellation of W.T.J.'s injuries, and knowingly failed to do so. The record supports that W.T.J.'s life, safety, and health was at risk, and M.C.'s neglect rose to the level of "egregious conduct," such conduct sufficient to support the trial court's Order terminating her parental rights.
M.C.'s contention the trial court's termination of her parental rights was premature, where other less restrictive means of protecting the child from harm had not been exercised, is likewise unpersuasive. See, e.g., Padgett v. Dept. of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla.1991) (holding parental rights constitute a fundamental liberty interest, and, therefore, HRS ordinarily must show that it has made a good faith effort to rehabilitate the parent and reunite the family). Our legislature has expressly provided that reasonable efforts to preserve and unify families need not be required where a court of competent jurisdiction has determined that egregious conduct has occurred. § 39.806(2), Fla. Stat. (1999). Simply, where egregious conduct occurs, the child's paramount safety and well-being prevails, and parental rights can be expeditiously terminated in the child's best interests. See Padgett, 577 So.2d at 570 (holding while the parent's interest in maintaining parental ties is essential, the child's entitlement to an environment free of physical and emotional violence at the hands of his or her most trusted caretaker is more so); § 39.001(1)(b)(1), Fla. Stat. (1999). We conclude, the DCF was not required by law to attempt to preserve and unify the family unit in this instance, and the trial court did not err in entry of an Order terminating M.C.'s parental rights.
We find M.C.'s remaining claims without merit, and, accordingly, affirm.
STEVENSON and TAYLOR, JJ., concur.
NOTES
[1] We do not suggest that it is impermissible for a trial court to appoint a guardian ad litem for a minor parent if requested to do so, or upon the court's own initiative. It is simply not required.