881 So.2d 70 (2004)
STATE of Florida, Appellant,
v.
Richard DUCHARME, Appellee.
No. 5D03-3433.
District Court of Appeal of Florida, Fifth District.
August 20, 2004.
Charles J. Crist, Jr., Attorney General, Tallahassee and Douglas T. Squire, Assistant Attorney General, Daytona Beach, for Appellant.
James B. Gibson, Public Defender and Nancy Ryan, Assistant Public Defender, Daytona Beach, for Appellee.
PER CURIAM.

ON MOTION TO VACATE STAY
Richard Ducharme has filed a motion to vacate an automatic stay which was entered by the trial court pursuant to rule 9.310(b)(2), Florida Rules of Appellate Procedure.[1] The stay was imposed upon an order entered by the trial court which dismissed the civil commitment petition which the State had filed against Ducharme under the Jimmy Ryce Act, sections 394.910-394.931, Florida Statutes (2000). Concluding that the automatic stay provisions of rule 9.310(b)(2) are inapplicable to this case, we grant the motion. However, pursuant to our inherent authority to issue *71 discretionary stays[2], we stay the effect of the trial court's dismissal order to allow the State the opportunity to seek a discretionary stay in the trial court pursuant to Florida Rule of Appellate Procedure 9.310(a). [3]
The State sought Ducharme's civil commitment under the provision of Florida's Jimmy Ryce Act. After conducting adversary hearings, the trial court found that probable cause existed to believe that Ducharme should be detained under the Act. Thereafter, Ducharme filed a motion to dismiss the case on the basis that his continued detention was improper since his sentence had expired several days before the date the State filed its commitment petition. The trial court denied the dismissal motion concluding that, under the Jimmy Ryce Act, the trial court possessed jurisdiction over the case since Ducharme had been in state custody when the petition was filed, even though he had been "wrongly" in custody. Soon thereafter, the Florida Supreme Court held in State v. Atkinson, 831 So.2d 172 (Fla.2002), that the Jimmy Ryce Act applies only to persons in lawful custody. Ducharme then renewed his dismissal motion citing to Atkinson. Upon review, the trial court granted the motion and directed Ducharme's release. The State immediately filed its notice of appeal and invoked the stay provisions set forth in rule 9.310.
Ducharme challenges his continued detention arguing that the automatic stay provisions of rule 9.310(b) are not applicable to cases involving detention under the Jimmy Ryce Act. The State responds by arguing that the case of State v. Mitchell, 848 So.2d 1209 (Fla. 1st DCA 2003), supports its position that the automatic stay provisions of rule 9.310(b)(2) are applicable in this case. The State is correct that the majority in Mitchell held that the automatic stay provision of rule 9.310 applies to State appeals of orders dismissing commitment proceedings filed under the Jimmy Ryce Act. However, we find the reasoning of Judge Padovano's dissent in Mitchell to be more persuasive than the position adopted by the majority. In that dissent, Judge Padovano concluded "that confinement under the Jimmy Ryce Act must rest on something more substantial than the effect of a mechanical rule that goes into effect by the unilateral action of the State." Id. at 1212. We agree with Judge Padovano that rule 9.310(b)(2) was never intended to apply to matters involving involuntary civil commitments:
The original purpose of the rule was to enable the state to maintain the status quo while avoiding the unnecessary expense of providing a supersedeas bond. A litigant who obtains a money judgment against the state should have no fear that the judgment will be uncollectible if the state loses the appeal. The state will always be subject to the jurisdiction of the court and a bond is not required because the state is a solvent litigant. These considerations, which prompted the adoption of the automatic stay provision in rule 9.310(b)(2), are not even remotely applicable to an involuntary commitment proceeding.
*72 Id. at 1213 (footnote omitted). Due to our disagreement with the majority opinion on this issue, we certify conflict with Mitchell. Also, we certify the following question to the Florida Supreme Court as being a matter of great public importance:
WHETHER THE AUTOMATIC STAY PROVISION SET FORTH IN RULE 9.310 OF THE FLORIDA RULES OF APPELLATE PROCEDURE APPLIES TO CIVIL COMMITMENT PROCEEDINGS INSTITUTED UNDER THE JIMMY RYCE ACT.
Motion GRANTED; Discretionary stay ENTERED; Conflict CERTIFIED; Question CERTIFIED.
PLEUS and PALMER, JJ., concur.
SAWAYA, C.J., concurs in part, dissents in part, with opinion.
SAWAYA, C.J., concurring in part, dissenting in part.
This case amply demonstrates why a stay pending review in the appellate court may be necessary in proceedings under the Jimmy Ryce Act [the Act]. My review of this record leads me to conclude that there is a likelihood that the trial court erred in dismissing the commitment proceedings and that Ducharme is not under any legal constraints that will keep him in Florida to face commitment proceedings should this court reverse the trial court's order. In my view, it is essential that a stay be entered in order to preserve the status quo until this court has the opportunity to finally resolve the issues in the main appeal directed to the propriety of the dismissal order. I agree with the majority that this court should stay the trial court's order of dismissal that orders the release of Ducharme, and I further concur with the majority that the issue of whether the automatic stay provisions of rule 9.310(b), Florida Rules of Appellate Procedure, should apply to proceedings under the Act should be certified to the Florida Supreme Court as a matter of great public importance. However, I disagree that the stay should be temporary and that this case should be remanded to the trial court to decide whether a permanent stay should be entered pending the outcome of the main appeal. I will now explain why I have come to this conclusion.
Rule 9.310 governs stays in appellate proceedings, and under this rule it appears that there may be three avenues we may follow in deciding whether a stay of the order of dismissal is appropriate in the instant case: 1) grant a temporary stay and remand the case to the trial court to consider a discretionary stay of its order of dismissal pursuant to rule 9.310(a); 2) grant a permanent stay pending review pursuant to this court's authority to issue stays of lower court orders under review; or 3) affirm the trial court's application of the automatic stay provisions of rule 9.310(b) to Jimmy Ryce proceedings in accordance with State v. Mitchell, 848 So.2d 1209 (Fla. 1st DCA 2003).
I concede that granting a temporary stay and remanding this case to the trial court to consider whether to grant a permanent stay pending review of the issues in the main appeal may be appropriate. However, I do not consider it the best course for us to follow. In my view, based on the record I have reviewed, we should exercise our authority to grant a permanent stay until the main appeal is resolved, making remand to the trial court unnecessary. This will save time and judicial resources because the trial court will not have to resolve an issue we may properly decide in the instant proceedings and it may save judicial resources of this court in the future because we will not be required to review the trial court's decision after *73 remand in a subsequent appeal by the losing party.
This court and others have held that an appellate court has authority pursuant to rule 9.310 to issue a stay pending review to preserve the status quo until the issues raised in the main appeal are resolved. See Perez v. Perez, 769 So.2d 389, 397 (Fla. 3d DCA 1999), review denied, 763 So.2d 1044 (Fla.2000); Offerman v. Offerman, 643 So.2d 1184 (Fla. 5th DCA 1994). As the court noted in Perez:
This Court has authority to issue a stay under Rule 9.310(f), Florida Rules of Appellate Procedure, for the purpose of preserving the status quo during an appellate proceeding. Once a stay is issued, the stay remains in effect until the appellate court mandate is issued. Factors which are considered by this Court in deciding whether to grant a stay include the moving party's likelihood of success on the merits, and the likelihood of harm should a stay not be granted.
769 So.2d at 391 n. 4 (citations omitted). I have reviewed the record in the instant proceedings, and it is clear to me that there is a likelihood that the State will be successful in obtaining a decision from this court reversing the order of dismissal and that there is a likelihood of severe harm to the State in proceeding with the commitment proceedings if Ducharme is released and the order of dismissal that caused his release is subsequently reversed.
Commitment proceedings were instituted against Ducharme pursuant to section 394.9135, Florida Statutes (2000). Section 394.9135 applies when the release from total confinement of the person to be committed becomes "immediate for any reason." § 394.9135(1), Fla. Stat. (2000) (emphasis added). In my view, a typical example of such a release would be the trial court's acceptance of a plea from a defendant and the imposition of a sentence to credit for time served. The procedure established by section 394.9135 requires that in instances such as this, the person will be transferred to the Department of Children and Family Services for evaluation and a determination whether to file a petition. § 394.9135(1), Fla. Stat. (2000). The state will have 72 hours after transfer within which to assess the individual to determine whether he or she meets the criteria for a sexually violent predator. § 394.9135(2), Fla. Stat. (2000). The state will then have 48 hours after receipt of the assessment report to subsequently file the commitment petition. § 394.9135(3), Fla. Stat. (2000). If a petition is filed and the trial judge determines that there is probable cause to believe that the person is a sexually violent predator under the statutory definition, "the judge shall order the person be maintained in custody and held in an appropriate secure facility for further proceedings in accordance with this part." § 394.9135(3), Fla. Stat. (2000). I read this part of the statute to be mandatory. Moreover, the provisions of section 394.9135 are not jurisdictional, and noncompliance by the state does not prevent it from instituting proceedings under the Act. § 394.9135(4), Fla. Stat. (2000).
It appears to me that the State complied with the requirements of section 394.9135. When he entered his plea and was sentenced to a term of incarceration in the Department of Corrections with credit for time served, Ducharme was transferred to the Department of Children and Families and evaluated, and a petition was filed in accordance with section 394.9135. Moreover, Ducharme was afforded an adversarial probable cause hearing that resulted in a finding that he met the criteria of a sexually violent predator under the Act. Ducharme, therefore, is required to remain in a secure facility pursuant to section *74 394.9135(3) and may not be released. Accordingly, I conclude that Ducharme remains in lawful custody under section 394.9135 and that his due process constitutional rights have not been violated.[1] Even if the statute was not complied with by the State, dismissal is inappropriate because the requirements of the statute are not jurisdictional. I, therefore, conclude that there is a very good likelihood that the State will prevail in the instant appeal. I will next address the likelihood of harm to the State if a stay is not granted pending the outcome of the main appeal.
The stated purpose of the Act is to create a civil commitment procedure for "a small but extremely dangerous number of sexually violent predators [that] exist who do not have a mental disease or defect that renders them appropriate for involuntary treatment under the Baker Act." § 394.910, Fla. Stat. (2002). The Legislature determined that "sexually violent predators have antisocial personality features which are unamenable to existing mental illness treatment modalities, and those features render them likely to engage in criminal, sexually violent behavior." Id. Moreover, the Legislature found that such a commitment procedure was necessary because the likelihood that a sexually violent predator will repeat acts of sexual violence is high. Id. Hence "[t]he purpose of the Act is to protect society from `repeat acts of predatory sexual violence' and to provide `long-term care and treatment of sexually violent predators.'" Sirmons v. Regier, 846 So.2d 1151, 1153 (Fla. 2d DCA 2003) (quoting § 394.910, Fla. Stat. (2002)).
The purpose of a stay is to allow maintenance of the status quo[2] until this court decides whether the trial court properly dismissed the underlying action. In my view, application of a stay pending review by this court fosters the stated purpose of the Act, especially in light of the fact that the trial court has found that probable cause exists to classify Ducharme as a violent sexual predator.[3]
*75 It is important to remember that if he is released before his commitment trial, Ducharme is under no legal constraint to remain in the state of Florida. His sentence has expired, and he is not on probation or any other form of supervision. Given the fact that proceedings under the Act are civil, there is no legal requirement that Ducharme actually attend his commitment trial. Equally important, I am not aware of any law that would allow Ducharme's extradition back to this state to face a civil action if he does in fact leave Florida.[4] Quite frankly, if Ducharme did voluntarily stay in Florida to await the outcome of these proceedings, especially in light of the trial court's finding of probable cause that he meets the criteria for a sexually violent predator, one could reasonably wonder whether he is in need of even more extensive mental health treatment than would otherwise be necessary. It is therefore clear that the lack of any legal authority to force Ducharme to attend his commitment trial if released prior thereto, or to have him extradited if he leaves Florida, provide ample reasons to conclude that there is a very good likelihood of harm to the State in the event a permanent stay pending the outcome of the main appeal is not granted. I therefore conclude that this court should issue a permanent stay order in the instant case until the main issues in this appeal are resolved and that remand to the trial court to decide this issue is not necessary.
As to the third approach, the majority adopts the dissent in State v. Mitchell, 848 So.2d 1209 (Fla. 1st DCA 2003), holding that application of the automatic stay provisions of Florida Rule of Appellate Procedure 9.310(b)(2) violates Ducharme's constitutional due process rights. The majority in Mitchell, on the other hand, held that the rule does apply to appeals instituted by the state to review orders rendered in proceedings under the Act. The majority decision in Mitchell is premised on the fact that proceedings under the Act are civil actions rather than criminal proceedings and the rule by its plain language therefore applies. Of the three approaches I have mentioned under rule 9.310, I agree with the majority that the majority decision in Mitchell is not the approach that should be adopted by this court. Accordingly, we have expressed conflict with Mitchell and certified a question of great public importance regarding the applicability of the automatic stay provisions of rule 9.310 to proceedings under the Act. Therefore, I will discuss some *76 factors not mentioned in the majority decision in Mitchell that militate in favor of application of the automatic stay provisions of the rule to proceedings under the Act in the hopes that the discussion may be of some benefit to the Florida Supreme Court should it decide to resolve the issue.
The dissent in Mitchell argues that the automatic stay provisions of the rule were never intended to apply to proceedings under the Act because the rule was adopted long before the Act was enacted. But simply because the Act may not have been envisioned by the Florida Supreme Court at the time it adopted the rule does not necessarily mean that the automatic stay provisions of the rule should not be applied to proceedings under the Act. Rather, it is necessary to look at the purpose of the rule  to maintain the status quo pending the outcome of the main appeal  and the stated purpose of the Act which is to protect society from those found to be dangerous sexual violent predators and to provide those individuals the necessary treatment for their disorder. Certainly it could be argued, especially in cases where a finding of probable cause to believe that a person is a violent sexual offender under the Act has been made by a trial court, that maintaining the status quo of leaving the individual in a treatment facility where he or she will continue to receive treatment pending the outcome of the appeal comports with the purpose of the rule and the stated goals of the Act. Moreover, it could be legitimately argued that the rule is applicable according to its clear and unambiguous provisions.
The Florida Supreme Court declared some time ago that it "is bound by the rules prescribed by it as much so as attorneys, and it must construe them as statutes are constructed." Syndicate Props. v. Hotel Floridian Co., 94 Fla. 899, 114 So. 441, 443 (1927) (citations omitted). Based on this pronouncement, decisions of more recent vintage apply the rules of statutory construction to the rules of court promulgated by the Florida Supreme Court. See Brown v. State, 715 So.2d 241, 243 (Fla.1998); Castillo v. Vlaminck de Castillo, 771 So.2d 609, 610 (Fla. 3d DCA 2000) ("Court rules are construed under the same principles of construction that apply to statutes.") (citations omitted); Rowe v. State, 394 So.2d 1059 (Fla. 1st DCA 1981).
The decisions are legion in which the Florida courts have applied the fundamental rule of construction that provides that a statute or rule must be enforced according to its plain and unambiguous language, even when the court is convinced that the Legislature may have intended something different. I need refer to no others than some of the more recent decisions emanating from the Florida Supreme Court. For example, in Florida Department of Revenue v. Florida Municipal Power Agency, 789 So.2d 320 (Fla.2001), the court stated:
If the language of the statute is clear and unambiguous, courts enforce the law according to its terms and there is no need to resort to rules of statutory construction. "Even where a court is convinced that the Legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 454 (Fla.1992) (quoting Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693, 694-95 (1918)).
Id. at 323 (footnote omitted); see also State v. Ruiz, 863 So.2d 1205, 1209 (Fla.2003). In State v. Jett, 626 So.2d 691 (Fla.1993), the court explained:
It is a settled rule of statutory construction that unambiguous language is not *77 subject to judicial construction, however wise it may seem to alter the plain language. While the dissent's view below has much to commend it, we find that the decision whether or not to engraft that view into the Florida Statutes is for the legislature. We trust that if the legislature did not intend the result mandated by the statute's plain language, the legislature itself will amend the statute at the next opportunity.
Id. at 693; see also M.W. v. Davis, 756 So.2d 90, 101 (Fla.2000); McLaughlin v. State, 721 So.2d 1170 (Fla.1998); Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (observing that "`[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.'") (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)); Jackson County Hosp. Corp. v. Aldrich, 835 So.2d 318 (Fla. 1st DCA 2002).
The argument follows that the trial and district courts must therefore apply the rule according to its plain and unambiguous language and not as they would like for it to apply or think that it ought to apply. The rule simply, plainly and unambiguously states that "[t]he timely filing of a notice shall automatically operate as a stay pending review, except in criminal cases, when the state ... seeks review...." Fla. R.App. P. 9.310(b)(2). Other than criminal cases, there are no other exceptions. As the majority noted in Mitchell, proceedings under the Act are civil rather than criminal. Failure to apply the rule pursuant to its clear and unambiguous terms may violate the well-accepted rule of construction discussed above. Therefore, the argument may be made that trial and appellate courts should apply the rule according to its unambiguous language and leave it to the Florida Supreme Court to change it if it intends the rule to exclude proceedings under the Act.
I also note that while the rule provides for an automatic stay, the rule also provides that "[o]n motion, the lower tribunal or the court may extend a stay, impose any lawful conditions, or vacate the stay." Fla. R.App. P. 9.130(b)(2). Hence, if the stay is automatically applied, the person subject to the stay may file a motion in the trial court or this court to vacate it, thereby rendering the continued application of the stay a matter of discretion.
Moreover, the concept of the automatic stay pending review is not foreign to the Act. I note that automatic stay provisions are contained in section 394.9215, Florida Statutes (2002), which provides that individuals held in a secure facility may file a petition for writ of habeas corpus alleging that the conditions of confinement violate their statutory or constitutional rights and the trial court may release the individual if it finds that no other relief will remedy the violations.[5] The state has the right to *78 appeal such an order and the statute specifically provides for an automatic stay pending review of the order by the appellate court. Hence, an individual whose statutory or constitutional rights are found by a trial court to be violated must nevertheless remain in that same secure facility because the order of release is stayed pending review by the appellate court. It therefore could legitimately be argued that it is appropriate to stay the order of dismissal rendered in a commitment proceeding properly brought under section 394.9135, especially when a finding of probable cause has been made by the trial court that the person meets the criteria of a sexually violent predator.
To conclude, while there are compelling arguments that may be made in favor of application of the automatic stay provisions of the rule to proceedings under the Act, especially where a finding of probable cause has been made by the trial court that the individual qualifies as a violent sexual predator, I do not believe this approach should be adopted by this court. Of the other two approaches I have discussed that are appropriate for this court to adopt, in the instant case, I believe that we should order a permanent stay pursuant to our authority to do so after considering the likelihood of the State's success in the main appeal and the harm that may be caused absent a stay. I believe this will save time and judicial resources.
In other cases, the trial court, upon proper motion, will have to initially decide whether a stay is appropriate, subject to review by the appellate courts. Given the abuse of discretion standard of review appellate courts will have to apply to review stay orders, it is important that trial courts be very careful and vigilant in deciding whether a stay should be granted in proceeding under the Act. If the motion for stay is not made in the trial court, a motion may be made in the appellate court, which may decide to either grant or deny a stay after application of the weighing process I have applied in the instant case. I believe that this approach, when compared to the approach adopted by the court in Mitchell, better balances the due process rights of individuals subject to commitment proceedings under the Act with the rights of the state to commit sexually violent predators in order to protect society from their dangerous conduct and provide them the treatment they so desperately need for their disorder. While the balance we strike may not be perfect, it seems to be the best we can do with the rules of procedure we must apply to guide us in our determination.
NOTES
[1] Rule 9.310 provides in relevant part:

Rule 9.310 Stay Pending Review
* * *
[b](2) Public Bodies; Public officers.
The timely filing of a notice shall automatically operate as a stay pending review, except in criminal cases, when the State, any public officer in an official capacity, board, commission or other public body seeks review....
Fla. R.App. P. 9.310.
[2] See Gilliam v. State, 268 So.2d 379 (Fla.1972).
[3] Rule 9.310(a) authorizes the trial court, in its discretion, to grant a stay of its order pending appeal "conditioned on the posting of a good and sufficient bond, other conditions, or both." On remand, the burden will then be where it belongs, on the State, as the party bringing the appeal, to establish that grounds exist warranting the imposition of a stay. If such a motion is filed by the State, within 10 days, our discretionary stay shall remain in effect until the trial court rules on such motion.
[1] The trial court dismissed the State's petition because the trial court found that after Ducharme entered his plea and was sentenced to credit for time served, he was no longer in lawful custody at the time the commitment proceedings were instituted and, pursuant to the decision in State v. Atkinson, 831 So.2d 172 (Fla.2002), the trial court did not have jurisdiction to proceed with the commitment proceedings. Any reliance on Atkinson to support the conclusion that Ducharme was illegally detained after his plea and sentence is misplaced. See Tanguay v. State, 880 So.2d 533 (Fla. 2004). In Atkinson, the defendant was incarcerated when the Act went into effect on January 1, 1999, and the court held that the Act applied to all inmates in lawful custody on that date who fit within the definitions of the statute. Because the defendant had been sentenced under the 1995 sentencing guidelines, which the court in Heggs v. State, 759 So.2d 620 (Fla.2000), declared unconstitutional, he was resentenced on May 25, 2000, to 21 months, nunc pro tunc. The effect of the resentencing order was that the defendant's prison term had already expired by June 25, 1998, which was a date prior to the effective date of the Act. Two weeks after the resentencing, the state filed a petition for the defendant's commitment under the Act. The Florida Supreme Court held that "the Ryce Act is limited to persons who were in lawful custody on its effective date." 831 So.2d at 174. Therefore, because of the resentencing, which caused the defendant's sentence to expire prior to the effective date of the Act, the court held that the defendant should be immediately released. Ducharme argues that the decision in Atkinson should be extended to apply to him. But unlike the defendant in Atkinson, Ducharme was in lawful custody on or after January 1, 1999, which was the effective date of the Act. See Tanguay.
[2] The status quo in the instant case is that Ducharme remain in civil commitment and receive treatment pending this appeal.
[3] The finding that Ducharme meets the criteria for a sexually violent predator is based on his rather extensive criminal history involving crimes of deviant sexual behavior and violence and the results of psychological evaluations. The record reveals that in 1976, Ducharme was convicted in Michigan of gross indecency and third-degree penetration of a fifteen-year-old male victim. A few months later, Ducharme was convicted of burglary and assault with intent to commit murder for shooting his boyfriend's suspected lover in the head. In 1985, Ducharme was convicted of aggravated assault arising from forced sexual activity with another male victim. Ducharme was subsequently convicted, again in Michigan, for criminal sexual conduct and remained incarcerated on this charge from October 27, 1987, through April 24, 2000. After release from prison in 2000, Ducharme was brought back to Florida where he was charged with violating his probation stemming from convictions for two counts of aggravated assault involving forced sexual activity with an unwilling victim. In my view, this case exemplifies why the Legislature enacted section 394.9135(3), Florida Statutes, which provides that once probable cause has been established that a person is a sexually violent predator, he or she must remain in a secure facility and shall not be released.
[4] The authority to extradite fugitives from justice emanates from Article IV, Section 2, United States Constitution, and only applies to those charged with "treason, felony or other crime." § 941.02, Fla. Stat. (2002); see also Josey v. Galloway, 482 So.2d 376 (Fla. 1st DCA 1985).
[5] As stated in Anglin v. Mayo, 88 So.2d 918 (Fla.1956):

[The writ] is as old as the common law itself and is an integral part of our own democratic process. The procedure for the granting of this particular writ is not to be circumscribed by hard and fast rules or technicalities which often accompany our consideration of other processes. If it appears to a court of competent jurisdiction that a man is being illegally restrained of his liberty, it is the responsibility of the court to brush aside formal technicalities and issue such appropriate orders as will do justice. In habeas corpus the niceties of the procedure are not anywhere near as important as the determination of the ultimate question as to the legality of the restraint.
Id. at 919-20.