756 So.2d 1108 (2000)
C.J., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, and The Guardian Ad Litem Program, Appellees.
No. 3D99-2518.
District Court of Appeal of Florida, Third District.
May 10, 2000.
Mindy S. Glazer, Miami, for appellant.
Robin H. Greene and Nancy Schleifer, for appellees.
Before COPE, SHEVIN and SORONDO, JJ.
SORONDO, J.
C.J. appeals to this court the lower court's Final Judgment terminating his parental rights as to his minor child, T.I.J.
C.J. is the father of the minor child, T.I.J., born on May 19, 1997. In October 1998, a Detention Petition was filed by the Department of Children and Families (DCF), alleging that the minor child, C.J., Jr., age two months, received an unexplained skull fracture which placed both C.J., Jr. and T.I.J. at risk of death or bodily injury. A Custody Release Order was entered, placing T.I.J. with her cousins.
On October 19, 1998, affidavits were filed by two physicians stating that C.J., Jr. was brain dead. On the same day, an *1109 Order was entered finding C.J., Jr. to be brain dead. The child's life support was removed and his body was released to the medical examiner.
The mother and maternal grandmother were given supervised visitation with T.I.J., and the father was not permitted any contact. In January 1999, a Case Plan was filed by the DCF and accepted by the court, with a goal of terminating the father's parental rights.
In February 1999, DCF filed a Petition for Termination of Parental Rights (TPR) as to the mother and the father. In March of 1999, a detention petition was filed by DCF pertaining to T.I.J. because her cousins could no longer care for her. On March 15, 1999, a Detention Order was entered placing T.I.J. in shelter. Thereafter a custody release order was entered placing T.I.J. in temporary custody of her maternal grandmother.
In June 1999, the father filed an Emergency Motion for Continuance of the TPR trial until the father's criminal trial for the murder of C.J., Jr., was tried. An Order was entered on June 23, 1999, denying the father's motion for continuance. On the same day, the father filed an Emergency Petition for Writ of Common Law Certiorari with this Court, seeking to quash the order of the trial court and directing that court to continue the TPR trial. This Court entered an order on June 24, 1999, denying the father's petition.
The TPR trial was held on June 24th and 25th, 1999. At the commencement of the trial, the father renewed his motion for stay of the proceedings pending the outcome of his criminal trial on murder charges. The trial court denied the motion.
After the close of the Department's case, the father's attorney made a Motion to Dismiss, which was denied. In the father's case in chief, the father's attorney proffered that he would like to put his client on the stand to testify, but because he had been indicted on charges of first degree murder and child abuse, he could not testify. The father's attorney stated that the father would like to speak on his own behalf and tell the court how much he loved T.I.J., that he did not want his parental rights terminated, and that he wished to invoke his right to remain silent.
At the close of the evidence, the trial court terminated the parental rights of the father as to the minor child, T.I.J. An order was entered on August 23, 1999, denying the TPR petition as to the mother and finding the child to be dependent. On the same day an Order was entered terminating the father's parental rights. This appeal followed.
The father raises several claims of error; we find only two worthy of discussion. The first claim is that the trial court abused its discretion by denying his motion for continuance of the final hearing on the TPR petition until such time as his criminal charges for the murder of his younger child, C.J., Jr., were adjudicated. His second claim is that the trial judge erred in finding that the Guardian Ad Litem (GAL) recommended termination of the father's parental rights, when the GAL did not testify at the hearing, and in admitting the deposition testimony of the medical examiner, whom he could not cross-examine. We address each argument in turn.
"The decision to grant or deny a continuance is within the sound discretion of the trial court." Gore v. State, 599 So.2d 978, 984 (Fla.1992); Scott v. State, 717 So.2d 908, 911 (Fla.), cert. denied, 525 U.S. 972, 119 S.Ct. 425, 142 L.Ed.2d 346 (1998). Such a decision will be reversed only upon a showing of an abuse of that discretion. Id. See also D.B. v. Department of Children & Families, 742 So.2d 275, 277 (Fla. 1st DCA 1998); Fredrick v. State Dep't of HRS, 523 So.2d 1164, 1167 (Fla. 5th DCA 1988). In determining whether a continuance should be granted under the circumstances presented by this case, the trial court must consider two primary concerns. First and foremost is the best interest of the child, which ordinarily *1110 requires a permanent placement at the earliest possible time. See §§ 39.808.810, Fla. Stat. (Supp.1998). The second consideration is affording fairness to the parents involved.
In this case, the father is charged with the first degree murder of another child. Depending on the complexity of the issues and whether the death penalty is involved, this type of case can take anywhere from one to three years to be trial ready. Absent exceptional circumstances, it would be unreasonable to postpone a determination on the termination of parental rights issue for such an excessive period of time. Accordingly, we cannot conclude that the trial court abused its discretion in denying the requested continuance. Although C.J. had a trial date for his murder case, trial dates in such cases are often meaningless. Counsel made no representation that the case was certain to be tried on that day and all indications were to the contrary.[1] Moreover, T.I.J. had been taken from her parents eight months earlier and was in desperate need of permanent placement.
We agree with the father that the trial judge erred in making findings based on the GAL's report and the deposition of the medical examiner, as these were hearsay. Nevertheless, we find these errors to be harmless. See King v. State, Dep't of HRS, 601 So.2d 1343 (Fla. 3d DCA 1992); Fredrick, 523 So.2d at 1167. The GAL's report was cumulative and the critical elements of the medical examiner's deposition testimony were also testified to by Dr. Walter Lambert, the medical director of the Child Protection Team. Both sides stipulated to Dr. Lambert's expertise in the field of child abuse. He was present in the courtroom and subject to cross examination. Most significantly, Dr. Lambert testified that he reviewed the medical records from Baptist Hospital,[2] and that the child died as a result of blunt trauma to the head. He characterized the blow to the head as very significant and added that the medical literature on falls reflects that the injuries suffered by C.J., Jr. would have had to come from a fall of above forty-five feet. In conjunction with the other evidence presented, including the father's several, inconsistent explanations of how the child was injured, the evidence presented was overwhelming.
Affirmed.
NOTES
[1] We can conceive of situations where a brief delay might be perfectly reasonable. For example, where a parent charged with a crime advises the trial judge that he or she has filed a demand for speedy trial in his or her criminal case and would therefore have to be tried on those charges within sixty daysa first request for a brief continuance to accommodate that schedule might be warranted.
[2] These records were admitted into evidence without objection.