798 So.2d 32 (2001)
A.C., The Mother and G.C., Appellants,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
Nos. 4D00-4487, 4D01-607.
District Court of Appeal of Florida, Fourth District.
October 17, 2001.
*33 Maria Rozenson of Pickett, Marshall & Glassman, P.A., West Palm Beach, for appellant A.C.
Ronald K. Lantz, West Palm Beach, for appellant G.C.
Charles D. Peters, West Palm Beach, for appellee.
WARNER, J.
A mother of a twelve year old girl and a two year old boy and the father of the boy appeal final orders terminating their parental rights.[1] They both contend that there was insufficient evidence that it was in the best interests of the children to terminate parental rights. The mother also argues that, because of pending criminal charges against her, a continuance of the termination trial should have been granted. Because there was competent, substantial evidence to support the trial court's order terminating the mother's rights, and the court did not abuse its discretion in denying her requested continuance, we affirm as to the daughter. As to the son, we reverse because the state failed to prove that termination, without offering a case plan for reunification, was the least restrictive means to protect him from harm.
The Department of Children and Family Services ("DCFS") filed a petition for termination of parental rights ("TPR") after an investigation revealed that the mother had punished her twelve year old daughter by holding her hand over a hot stove burner, causing second degree burns. No dependency and case plan was offered, as the mother was also charged with aggravated child abuse. In addition, DCFS petitioned to terminate both the mother and the father's parental rights as to their son, based upon the abuse of the daughter.
At the trial, Dr. Crosby, a psychologist who evaluated the parents and child for DCFS about a month after the incident, testified that while the mother appeared to be a committed, loving parent, she blamed others for her child's burned hand and did not acknowledge her responsibility for the injury. Further, the father would not admit or acknowledge his wife's responsibility. The psychologist testified that the parents' failure to acknowledge their responsibility for the child's injuries was the only problem holding them back from being rehabilitated. When he was told that they had attended eighteen counseling sessions and parenting classes and the parents still never actually admitted any wrongdoing, he testified that he would be concerned that the child would be at a high risk if returned to the home. Nevertheless, Dr. Crosby recommended a plan of therapy and counseling and stated that, with this plan, the family was salvageable. He felt that the father was capable of being re-educated concerning appropriate disciplinary methods.
Even though no case plan was offered, the parents sought counseling voluntarily. A mental health counselor, Ms. Goff, worked with both of the parents. Ms. Goff saw the mother eighteen times and the father seventeen times. The parents were from Haiti, where physical discipline is permitted. Ms. Goff advised them that *34 discipline methods were different in the United States, and she believed that the parents understood and were willing to change. When asked whether anything like the hand-burning incident would happen again, Ms. Goff did not think so because it had been a great lesson for them. She also concluded that the family was salvageable, and the children could be returned to the home without risking maltreatment. While she conceded that the parents never admitted responsibility for the burning incident, she said that a "confession" was not the object of her treatment sessions with the parents.
The court also appointed a guardian ad litem for the children who opined at trial that it was in the daughter's manifest best interest to terminate the mother's parental rights. With respect to the son, the guardian testified that the parents' rights should not be terminated if they complete a comprehensive case plan. He explained that the son was a happy, well-adjusted little boy and that the parents should be given an appropriate opportunity to reunite with the child.
The DCFS representative testified that the daughter would be difficult to place in an adoptive home because of her mental status. During these proceedings, two Baker Act petitions had been filed on her. Therefore, she was facing long-term foster parent care. It was apparent from the testimony that the DCFS investigator had determined early on to terminate the rights of these parents. He refused services to the parents, even though he admitted that, with a case plan, the family could be reunified at least with respect to the son.
The court determined that the mother had inflicted the burns on the daughter, and that both parents engaged in other inappropriate behavior towards the daughter (stepdaughter of the father). Based upon the psychologist's testimony that "all children in a family are at risk for maltreatment and that the risk for maltreatment is higher when the parents have not acknowledged wrongdoing," the court terminated the mother's rights as to the daughter and both the mother and father's rights as to the son.
In Padgett v. Department of Health & Rehabilitative Services, 577 So.2d 565 (Fla.1991), the supreme court balanced the fundamental right of parents to raise their children with the ultimate welfare of the child. It determined that:
To protect the rights of the parent and child, we conclude that before parental rights in a child can be permanently and involuntarily severed, the state must show by clear and convincing evidence that reunification with the parent poses a substantial risk of significant harm to the child. ...
We note that because parental rights constitute a fundamental liberty interest, the state must establish in each case that termination of those rights is the least restrictive means of protecting the child from serious harm.
Id. at 571 (emphasis added).
The mother argues that there was insufficient evidence that it was in the manifest best interest of the children to terminate her parental rights as to each of them. To terminate parental rights, the evidence must be clear and convincing. See id.; In re Adoption of Baby E.A.W., 658 So.2d 961, 967 (Fla.1995).
With respect to the daughter, evidence was presented that the mother committed aggravated child abuse on the daughter by burning her hand. Therefore, a ground for termination was proved. See § 39.806(1)(g), Fla. Stat. (2000). The evidence with respect to whether it was in the daughter's manifest best interest to terminate *35 her mother's parental rights was mixed. The child did not want to go back to the home, yet no permanent placement was expected. She will likely be placed in group homes and require substantial mental health services. While the testimony showed that the parents were capable of loving her and caring for her, many of the mother's actions after the burn incident call into question her reactions to her child. The guardian recommended termination. Based upon all of the evidence, the trial court determined that it was in the daughter's manifest best interest to terminate the mother's rights. Taken in the light most favorable to the trial court's conclusion, substantial, competent evidence supports that disposition. See Baby E.A.W., 658 So.2d at 967.
The mother also contends that she should have been granted a continuance of the TPR trial. She claimed that she would be required to invoke her Fifth Amendment privilege at the TPR trial and could not present a viable defense because of her pending aggravated child abuse criminal charge. The third district recently addressed this issue in C.J. v. Department of Children & Families, 756 So.2d 1108 (Fla. 3d DCA 2000), and determined that the trial court must exercise discretion in balancing the child's interest in permanent placement at the earliest possible time with affording fairness to the parents. Concluding that a criminal case may take years to resolve, including both trial and appellate time, the third district affirmed the denial of a continuance of the TPR proceedings because of pending criminal proceedings. See id. at 1110. Likewise, we find that the trial court's exercise of discretion in denying the continuance in this case is supported by the record.
As to the son, the termination of both parents' rights was based upon the abuse of the daughter and Dr. Crosby's testimony that the parents' failure to admit responsibility for the burn incident was an obstacle to their rehabilitation. Therefore, he felt that the child was at substantial risk of mistreatment.
Parental abuse of one child may serve as the basis for termination of a parent's rights in another child. See Padgett, 577 So.2d at 571. However, a single act of abuse of one child does not constitute, by itself, proof that other children are at substantial risk of imminent abuse and neglect. See R.F. v. Fla. Dep't of Children & Families, 770 So.2d 1189, 1194 (Fla. 2000). It must be shown that "the behavior of the parent was beyond the parent's control, likely to continue, and placed the child at risk." D.H. v. Dep't of Children & Families, 769 So.2d 424, 427 (Fla. 4th DCA 2000) (quoting Gaines v. Dep't of Children & Families, 711 So.2d 190, 193 (Fla. 5th DCA 1998)).
In this case, not only did DCFS fail to show the factors set forth in D.H. and Gaines, but it also failed to show the second condition of Padgett, namely that termination was the least restrictive means to protect the son. Not one witness recommended termination of either parent's rights to their son. Everyone recommended the provision of services based upon a case plan. While Dr. Crosby testified that the child was at risk because the parents failed to acknowledge their responsibility after many counseling sessions, the counselor at those sessions did not work with them to "confess" their culpability.[2] Her responsibility was to teach them better parenting techniques. It was *36 inappropriate to base termination on the testimony of a professional who recommended that the parents receive counseling and therapy and then, even though such counseling has not been provided, determines the parents still present a risk. Cf. S.Q. v. Dep't of Health & Rehabilitative Servs., 687 So.2d 319, 324-25 (Fla. 1st DCA 1997).
In sum, the state did not prove that the manifest best interests of the son would be served by terminating his parents' rights. The trial court's order with respect to G.C. is reversed and remanded for further proceedings in accordance with section 39.811(1). We affirm the trial court's order with respect to the termination of the mother's parental rights as to G.J.
Affirmed in part; reversed in part.
DELL and GUNTHER, JJ., concur.
NOTES
[1] The parents' appeals are consolidated for purposes of this opinion.
[2] If the parents were offered a case plan, it could not be conditioned on admitting abuse. See § 39.601(1), Fla. Stat. (2000).