814 So.2d 488 (2002)
C.W., the Mother of K.L.B., Jr., a Child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 1D01-1710.
District Court of Appeal of Florida, First District.
April 10, 2002.
*489 Joyce Sibson Dove, Tallahassee, for Appellant.
Avron Bernstein, Child Welfare Attorney, Department of Children and Families, Tallahassee, for Appellee.
POLSTON, J.
Appellant C.W. appeals the final order terminating her parental rights to K.L.B. Jr., her fifth child. C.W. argues that: (i) her due process rights were violated because the trial judge watched two police videotapes outside the presence of the parties and all counsel, (ii) the videotapes were inadmissible as evidence pursuant to section 90.410, Florida Statutes (2000), (iii) the videotapes were inadmissible as evidence pursuant to section 90.403, Florida Statutes (2000), (iv) the trial court improperly shifted the burden of proof from appellee Florida Department of Children and Families to her by overruling the judgments of the guardian ad litem and expert with no factual findings other than the trial court's own "common sense," and (v) *490 she "has never abused, neglected nor abandoned any child."
We affirm.

I. Videotapes
The trial court did not err by viewing the videotapes outside the presence of the parties and all counsel. When scheduling the remainder of the trial, the trial judge asked whether there was any objection to her viewing the videotapes alone. C.W.'s counsel stated that "we have no objection to that," thereby affirmatively waiving any due process rights to be present during the viewing. See Hanks v. State, 786 So.2d 634, 635-36 (Fla. 1st DCA 2001)(holding that defense counsel's agreement to the publication of a deposition to the jury, although the defendant was not present when the deposition was taken, was an affirmative waiver of the defendant's constitutional right to confront the witness; a personal on-the-record waiver by the defendant himself was not required).
The arguments that the videotapes were inadmissible as evidence pursuant to sections 90.410 and 90.403, Florida Statutes (2000) were not preserved by objection to the trial court. See Tallahassee Furniture Co. v. Harrison, 583 So.2d 744, 754 (Fla. 1st DCA 1991)("[A]n appellate court may consider only the objections to admissibility of evidence on the grounds specifically stated at trial, and will not consider those objections to admissibility urged for the first time on appeal.").

II. Burden of Proof
The trial court did not improperly shift the burden of proof from the Department to C.W. by "overruling" the "judgments" of the guardian ad litem and expert. The trial court acknowledged and considered both the reports of the guardian ad litem and the expert testimony of Dr. Knobbe, but made its decision by considering all of the evidence and the manifest best interests of the child pursuant to section 39.810, Florida Statutes (2000). The trial court may reject the recommendation of the guardian ad litem[1] and give weight to expert testimony in consideration of all the evidence. The guardian ad litem and the expert do not render legal judgments that have effect until overruledthat is the function of the trial judge.
The trial court, in her final order terminating parental rights, listed the various evidence that she considered:
The Court heard testimony from: Tory Wilson of Camelot Care and formerly with the Department of Children and Families; Melinda Wills, Tallahassee Police Department; Lisa Johnson, Tallahassee Police Department; Dr. Thomas Truman, M.D.; Melinda King, Child Protective Investigator; Kanya Irving of Camelot Care and formerly with the Department of Children and Families; Kimberly Ellis, Child Protection Team; Dot Binger, Guardian Ad Litem; Cherelle Medley; Angie Hughes; Dr. Thomas Knobbe, Ph.D.; Jennifer Thompson; Jeanne Robbins, Department Protective Services Supervision; and Carolyn Williams. The Court has received into evidence and considered twelve (12) exhibits (a composite exhibit of photographs; the Termination of Parental Rights order in case number DP 96-1034 and the Per Curiam Affirmed opinion reflecting the appeal; a composite exhibit of photographs; *491 another composite exhibit of photographs; a videotape; an additional videotape; JudgmentState of Florida v. Carolyn Williams, Case No. 99-3599; Judgment and SentenceState of Florida v. Kenneth Bryant, Case No. R XXXX-XXXXA; composite exhibit of medical records; mediation agreement in DP 99-598; additional composite exhibit of photographs) submitted by the Department; and three (3) exhibits (psychological assessment of Dr. Thomas Knobbe; composite of Family Builders weekly progress reports; composite exhibit of photographs) submitted by the mother and Guardian Ad Litem.
The trial court then stated that her findings in the final order were supported "by clear and convincing evidence." See § 39.809(1), Fla. Stat. (2000)("In a hearing on a petition for termination of parental rights, the court shall consider the elements required for termination. Each of these elements must be established by clear and convincing evidence before the petition is granted."); In re Adoption of Baby E.A.W., 658 So.2d 961, 967 (Fla. 1995)("To terminate a parent's right in a natural child, the evidence must be clear and convincing.").
The trial court found:
5. [C.W.'s] parental rights to three (3) siblings of the above-named minor child have been terminated involuntarily. 39.806(1)(i), Florida Statutes (2000). [C.W.] had yet another minor child regarding whom [C.W.] surrendered her parental rights. [C.W.] failed to remedy the reasons for dependency regarding her other children, to whom her parental rights were terminated, despite the provision of services. Provision of prior services to [C.W.] regarding the three siblings to whom [C.W.'s] parental rights were terminated is proven by some of the testimony of Tory Wilson as well as the exhibits (prior Termination of Parental Rights Order and the Per Curiam Affirmed opinion of the First District Court of Appeal on the direct appeals of that order). 39.806(1)(c), Florida Statutes (2000). The prior order sets out findings as to the services previously offered to [C.W.] as well as her failure to comply with those services. The prior Termination of Parental Rights order was admitted into evidence pursuant to 39.814(6)(a), Florida Statutes (2000).
6. On or about August 30, through September 1, 1999, while in the custody of his natural mother (with [Mr. B.] in the home), [T.G.], a sibling of the above-named minor child, suffered burns to his neck, arm and legs, bruises and welts on the buttocks and legs and a red circular mark on his head. [T.G.] also sustained severe injuries to his liver, pancreas, and kidney. [T.G.'s] head did not suffer serious trauma. The mother failed to protect the child from [Mr. B.]'s abuse. The shelter order of August 3, 1999 specifically prohibited the natural mother from leaving [T.G.] alone with other people, and this included [Mr. B.]. The mother was in direct violation of the order when she left [T.G.] with [Mr. B.]. The mother pled nolo contendere to two (2) counts of child neglect, a third degree felony and has been adjudicated guilty. Given the mother's entire history with her children, involvement with the Department, the services, and Court orders, the mother's conduct was egregious and deplorable, flagrant, and outrageous conduct. By virtue of her conduct, the natural mother had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct that threatens the life, safety, or physical, mental, or emotional health of [T.G.], a *492 sibling to the above-named minor child. 39.806(1)(f), Florida Statutes (2000).
The standard of our review of the trial court's finding of clear and convincing evidence was explicitly stated by the Court in E.A.W.:
[O]ur task on review is not to conduct a de novo proceeding, reweigh the testimony and evidence given at the trial court, or substitute our judgment for that of the trier of fact. Instead, we will uphold the trial court's finding "[i]f, upon the pleadings and evidence before the trial court, there is any theory or principle of law which would support the trial court's judgment in favor of terminating... parental rights." Kingsley v. Kingsley, 623 So.2d 780, 787 (Fla. 5th DCA 1993), review denied, 634 So.2d 625 (Fla.1994).
Our review of the record shows substantial competent evidence to support the trial judge's finding of clear and convincing evidence that G.W.B. abandoned Baby E.A.W.
Id. at 967. Moreover, "a trial court's determination that evidence is clear and convincing will not be overturned unless it may be said as a matter of law that no one could reasonably find such evidence to be clear and convincing." In the Interest of D.J.S., 563 So.2d 655, 662 (Fla. 1st DCA 1990). Under these standards, we do not overturn the trial court's determination that the Department presented clear and convincing evidence supporting termination.

III. History of C.W. and Her Children
C.W. states that she "has never abused, neglected nor abandoned any child." Regarding her first three children, the trial court explicitly found that C.W. and the father had "abandoned or neglected and have continued to abandon or neglect their children pursuant to Section 39.01(1) and (36), and Section 39.464(1)(f) and (c), Florida Statutes (1997)." Subsequently, C.W. pled nolo contendere and was adjudicated guilty of two counts of child neglect, a third-degree felony, relating to T.G., her fourth child. C.W.'s statement that she "has never abused, neglected nor abandoned any child" completely ignores the record.
The termination of parental rights to siblings because of abuse or neglect may serve as grounds for terminating the parent's rights in a different child. See §§ 39.806(1)(f) and (i), Fla. Stat. (2000); Padgett v. Department of Health and Rehabilitative Services, 577 So.2d 565, 571 (Fla.1991). We echo the view by the Court in Padgett: "While we are loath to sanction government interference in the sacrosanct parent-child relationship, we are more reluctant still to forsake the welfare of our youth. Florida's children are simply too important." Id.
AFFIRMED.
BENTON, J., concurs with opinion; ERVIN, J., concurs and dissents with opinion.
BENTON, J., concurring.
K.L.B., Jr.'s older siblings suffered physical abuse at the hands of men with whom C.W. lived as a very young woman, men who are no longer in her life. The evidence did not show, however, that C.W. was ever physically abusive toward any of her children. This is definitely not a situation where "there is simply no plausible way that this case could come out other than to terminate the mother's parental rights." L.D. v. Dep't of Children & Family Servs., 770 So.2d 219, 220 (Fla. 3d DCA 2000).
But grounds for termination of parental rights were established under sections 39.806(1)(f) and (i), Florida Statutes (2000), *493 as even the dissenting opinion seems to concede, and the trial court has determined that it is in the child's manifest best interest that she be taken from her mother. See § 39.810, Florida Statutes (2000). Even if we would have decided differently if the decision had been ours in the first instance, on this record we are bound by the trial court's findings. Compare In re J.M.M., 795 So.2d 1034, 1035 (Fla. 2d DCA 2001), with In re C.F., 646 So.2d 793, 794-95 (Fla. 1st DCA 1994).
ERVIN, J., concurring and dissenting.
I concur with the majority in its disposition of all issues except that relating to whether clear and convincing evidence supports the trial court's decision that it was in the manifest best interest of the child, K.L.B., Jr., to terminate the mother's parental rights. As reflected in the majority's opinion, the lower court's findings justifying termination were based entirely upon C.W.'s prior conduct in regard to her four older children, which previously resulted in her ties to those children being terminated. The court thus decided that because of C.W.'s neglectful or abusive acts involving her first four children, the fifth child, K.L.B., Jr., was at risk of prospective harm, and it was in his best interest to extinguish the parental relationship. I cannot agree, because in my judgment the Department of Children and Families failed to present any evidence reasonably showing that the mother's prior conduct with her former children placed the fifth child at risk.
If the prior acts of a parent affecting other children can be appropriately considered without evaluating the current conduct of the parent in regard to an unharmed child, I could agree that a plethora of evidence supported termination of the mother's rights to K.L.B., Jr. For example, the mother's rights to three of her children were involuntarily terminated on April 7, 1998,[2] and she voluntarily surrendered rights to a fourth child after it had been severely abused on September 1, 1999, by a boyfriend in whose care the mother had placed the child. The relationship between the mother and the boyfriend was thereafter ended. He was convicted of aggravated child abuse and is currently serving a lengthy prison sentence. The fourth child was placed in other care following hospitalization for its injuries. As a result of this incident, the mother pled nolo contendere to two counts of child neglect and was adjudicated guilty and placed on probation.
The mother gave birth to the fifth child, K.L.B., Jr., the subject of the present appeal, on May 26, 2000, and she thereafter underwent a tubal ligation to prevent further pregnancies. Two days following the birth of K.L.B., Jr., the Department removed the child from the mother's custody and initially placed him in the care of his aunt, with whom the mother was also permitted to stay. On August 11, 2000, pursuant to sections 39.806(1)(c) and (1)(f), *494 Florida Statutes (2000), the Department filed a petition for termination of the mother's rights to K.L.B., Jr., alleging essentially that because of the mother's conduct involving her first four children, her continuing relationship with K.L.B., Jr., threatened his safety regardless of the provision of services, and that her egregious conduct as to the other children similarly threatened the safety of K.L.B., Jr. The court's order severing the parental ties generally mirrored the allegations contained in the petition, focusing almost exclusively upon the mother's prior conduct in regard to K.L.B. Jr.'s siblings, particularly the fact that the mother's rights to three of the prior children had been involuntarily terminated, a ground recognized by section 39.806(1)(i) as authorizing termination of a parent's rights to another child.
In deciding to eliminate the mother's ties to K.L.B., Jr., the court rejected or ignored the evidence pertaining to the mother's current conduct with him; specifically, the recommendation of the guardian ad litem that the petition be denied, because, in the guardian's opinion, a very close bond had formed between the child and the mother during the 37 visits she had observed, during which the mother had behaved correctly. The guardian continued, based on her observations, that the mother "would do everything in her power to keep this child safe." Although the guardian had supported the Department's termination petitions for the mother's first four children, she refused to do so as to K.L.B., Jr., explaining that she had noticed a substantial change in the mother's attitude toward this child in contrast to the mother's earlier conduct with her prior children. For example, the mother had been consistent in keeping every appointment with K.L.B., Jr., in taking things to him, and in checking on his needs; she had made progress with her employment; and she was contributing to the household expenses of the family with whom she lives. Moreover, unlike her family's prior attitude in regard to her relationship with her other children, her family supported her decision to keep K.L.B., Jr.
In addition to the guardian's recommendation, Dr. Thomas Knobbe, a Child Protection Team psychologist who evaluated the mother, also recommended against termination. Dr. Knobbe issued his report for the purpose of assisting the court and the guardian ad litem on how to proceed regarding the placement of K.L.B., Jr. He stated that he did not then favor terminating the mother's parental rights to the child for the reason that she had not yet received the proper treatment which would, in his opinion, permit an accurate determination of whether she could be a caring and protective parent. He noted evidence of growth in the 25-year-old mother's maturity, by her showing less tendency than she had in the past to minimize certain abusive aspects of her upbringing. He also observed the mother's interactions with the child on one of her visits to his office, pointing out the affectionate and relaxed attitudes the mother and child exhibited with one another. He concluded his comments with the following remarks: "At the end of the observation, K.L.B., Jr., was completely relaxed, chortling at his mother's efforts to get him to talk, directing his gaze at her face and reaching for her." Dr. Knobbe would not, however, recommend returning K.L.B., Jr., to the care of his mother on a full-time basis. He believed she would benefit from more counseling and, as the child grew, to develop further her parenting skills with him.
The Department presented no contrary evidence that the mother's present condition or actions with K.L.B., Jr., placed him at harm's risk, but instead, as stated, relied entirely upon her conduct involving *495 her first four children. The last incident resulting in the termination of the mother's rights to her fourth child occurred more than eight months before the birth of K.L.B., Jr. One can only speculate whether the Department's position would be the same if five years had elapsed from the date of the mother's earlier egregious conduct and K.L.B., Jr.'s birth, yet the interpretation the court below and the Department placed on the statute appears not to make the passage of time a significant factor in deciding whether termination is appropriate. In my judgment, if the pertinent provisions of section 39.806 are permitted to survive constitutional muster, they must be given a far more restrictive construction than the majority places on them in the present case.
In Padgett v. Department of Health & Rehabilitative Services, 577 So.2d 565, 571 (Fla.1991), the supreme court did say that a court could, under appropriate circumstances, terminate a parent's rights to a child who has been neither abused nor neglected, based upon the abuse or neglect of the child's sibling. In so ruling the court added the following caveat:
We note that because parental rights constitute a fundamental liberty interest, the state must establish in each case that termination of those rights is the least restrictive means of protecting the child from serious harm. This means that HRS [the predecessor agency of the Department of Children and Families] ordinarily must show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such plan for the present child.
In the present case, the Department has not demonstrated that termination of the mother's rights to K.L.B., Jr., is the least restrictive means that could be used to safeguard the child from a substantial risk of significant injury. It has extended no offer of provision of services to the mother, such as a case plan with the goal of reuniting her with the son. The Department argues that the above statements in Padgett are no longer applicable, because the statutes in effect at the time Padgett was decided have been amended to provide that if the mother's parental rights to a sibling have previously been terminated involuntarily, section 39.806(1)(i), Florida Statutes (2000), or if the mother had the opportunity but failed to prevent egregious conduct that affected the safety of the child's sibling, as occurred here, section 39.806(2) does not require reasonable efforts be undertaken to preserve and reunify families, nor does section 39.806(3) require a case plan for the goal of reunification. See also M.C. v. Dep't of Children & Family Servs., 814 So.2d 449 (Fla. 4th DCA 2001).[3]
I am not sure whether the legislature can trump the fundamental, constitutional liberty interest that a parent enjoys in the *496 care, custody, and management of his or her children by providing that a termination proceeding may commence upon a showing only that a parent's conduct was egregious as to another child, without regard to some proof of a causal connection between the prior conduct and the parent's current conduct with the child sought to be committed, particularly when the state has made no effort to ensure that termination is the least restrictive means of protecting the child from serious harm. It seems to me that the only appropriate avenue by which the liberty interest of a parent can be balanced against the manifest best interests of the child is to interpret subsections 39.806(1)(f), (2) and (3), which authorize permanent commitment without offering the parents a case plan for the goal of reunification, as meaning that if a parent's rights to another child have been severed because of the parent's egregious conduct in harming a child or in failing to protect the child from conduct that threatened its safety by reason of the actions of another person, there must be some link established between that conduct and any prospective, potentially injurious conduct to another child as yet unharmed. Compare the facts in In re C.W.W., 788 So.2d 1020 (Fla. 2d DCA 2001), with those in this appeal. In response to the Department's argument that it was not required by section 39.806(3), Florida Statutes (1999), to offer the mother a case plan with the goal of reunification, the court noted that the Department had failed to cite any case in which a parent's rights to a child were terminated, as the Department had sought in C.W.W., solely because a mother had given birth to a drug-dependent child.
If section 39.806 can be interpreted as permitting "the heavy hand of government paternalism," Padgett, 577 So.2d at 570, to be stretched out at any time to remove a child from its parent's custody, based solely on the parent's past conduct, without any regard for present circumstances, such a construction, in my judgment, would violate the fundamental liberty interest of the natural parent in the care, custody, and management of his or her child. The interpretation the Department advanced ignores empirical evidence, as presented in this case, that human beings have the ability to change, and that even parents deemed unfit because of their past actions to raise certain of their children deserve a second chance at raising others.
I therefore remain unconvinced in a case such as this in which a parent's rights to a child are sought to be severed permanently, based solely upon her past conduct in regard to other children, that the Department is no longer required to make a showing that termination is the least restrictive means of protecting the child from serious harm. Moreover, even if the pertinent statutes can reasonably be interpreted as no longer requiring a case plan with the purpose of reunification in a case involving only evidence of the parent's past conduct affecting a child or children other than the one sought to be permanently removed from the parent, in my judgment, such evidence cannot be deemed legally sufficient if there is no causal connection between the past conduct and the present.
In this regard, although they involve constructions of different statutes, cases involving dependency are instructive. For example, in In re M.F., 770 So.2d 1189 (Fla.2000), the court upheld a dependency order based upon the totality of the circumstances, and disapproved a portion of the Second District's decision that had affirmed a dependency determination based only on the fact of the father's conviction of a sexual offense on a stepchild, which, in the Second District's judgment, placed at risk other children in the family. In reaching its decision, the supreme court *497 noted it had previously held in Padgett that parental rights to a child could be terminated due to the parent's abuse or neglect of a different child, but that its ruling there was not decided on any single fact; instead, it was based "on extensive and wide-ranging evidence of abuse and neglect." Id. at 1193. Finally, the court approved the flexible approach taken by the Fifth District, which focuses "on all the circumstances surrounding the petition." Id. at 1194. The court thereafter cited a number of Fifth District cases which had reversed dependency orders that were based solely on evidence of parental sexual abuse of another child or children without any further showing of risk to the child sought to be declared dependent. Id. at 1193-94, n. 12. The court observed, "[T]he Fifth District has held that some additional proof of risk to the current child is required." Id. at 1193.
There is no reason not to apply a similar restrictive interpretation to section 39.806(1)(f), permitting the filing of a petition seeking termination of parental rights in situations where a parent either engaged in egregious conduct, or failed to prevent egregious conduct threatening the safety of a child or the child's sibling, or to section 39.806(1)(f)(2), defining egregious conduct, among other things, as including "an act or omission that occurred only once but was of such intensity, magnitude, or severity as to endanger the life of the child." Compare these provisions with section 39.01(14)(f), Florida Statutes (2000), defining as a dependent child one who is found "[t]o be at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians."
The analysis provided in D.H. v. Department of Children & Families, 769 So.2d 424 (Fla. 4th DCA 2000), is particularly helpful. There the court noted that although the trial court could properly find that appellant had committed an act of abuse on his daughter's half-sister, no nexus was established between that act of abuse and any prospective abuse to the daughter. The court quoted Gaines v. Department of Children & Families, 711 So.2d 190, 193 (Fla. 5th DCA 1998), requiring that in situations where adjudications of dependency are based on prospective abuse, "`there ... be a showing in the record that the behavior of the parent was beyond the parent's control, likely to continue, and placed the child at risk.'" D.H., 769 So.2d at 427. The court further explained that cases approving dependency determinations on such basis
have centered on some mental or emotional condition of the parent which will continue, such as mental illness, drug addiction, pedophilia. The first district also relied upon a combination of a mental condition of the mother and egregious abuse of a sibling (death of child due to overdose of prescription medication) to conclude that the remaining child was dependent. See In Interest of M.T.T., 613 So.2d 575 (Fla. 1st DCA 1993). However, where a father physically abused his step child and had emotional and psychological problems but there was no evidence that he had abused his natural child, the court concluded that the evidence was legally insufficient to support a determination of dependency. See Fetters v. Department of Health and Rehabilitative Servs., 589 So.2d 959, 959 (Fla. 5th DCA 1991).
Id. at 427.
The Fourth District has, in fact, in A.C. v. Department of Children & Families, 798 So.2d 32 (Fla. 4th DCA 2001), applied the same test it approved in D.H. to its review of an order terminating the parents' rights based on the likelihood that the child was at substantial risk because of *498 an act of abuse the parents committed on another child. The court noted that in cases involving termination on a theory of prospective abuse, evidence of abuse as to one child is not by itself sufficient; proof must also be submitted showing that the behavior of the parent is likely to continue, thereby placing the unharmed child at risk. Id. at 35.
In the case at bar, the Department presented no such evidence, and, as previously stated, it relied entirely on the prior conduct of the mother in regard to her other children. In my judgment, the state did not prove that the manifest best interests of K.L.B., Jr., would be served by terminating the mother's rights. As did the Fourth District in A.C., I would reverse the order of termination and remand the case for further proceedings, as authorized by section 39.811, Florida Statutes (2000), relating to the trial court's powers of disposition.
NOTES
[1] The recommendation of the guardian ad litem is one of eleven different relevant factors listed within section 39.810, Florida Statutes (2000), for consideration by the trial court.
[2] It appears from the court's order that the terminations were based on section 39.464(1)(c), Florida Statutes (1997), providing that a petition may be filed if the parent engaged in conduct toward the children demonstrating that the continued involvement of the parent in the relationship threatens the well-being of the children, and on section 39.464(1)(f), providing for the filing of a petition if the children have been determined dependent, a case plan has been filed, and the children continue to be abused, neglected, or abandoned. The facts recited in the court's order indicate that because of the parents' neglect resulting from them placing the children in the care of other persons who physically abused them, the children were adjudicated dependent, and a termination petition was thereafter filed due to the parents' failure to comply with the conditions contained in the case plan.
[3] M.C refers to section 39.806(2), Florida Statutes (1999), as authority for the position that reasonable efforts to preserve and unify families need not be made where egregious conduct has occurred. M.C. did not involve, as the present case, a termination proceeding based on prospective neglect or abuse by a parent. Moreover, the panel of judges who decided M.C. did not cite a decision decided by a different panel of the Fourth District the preceding month, which, in reviewing an order terminating the rights of parents to a child based entirely on prospective abuse, ruled that the state had failed to show that termination was the least restrictive means of protecting the child from harm. See A.C. v. Dep't of Children & Families, 798 So.2d 32 (Fla. 4th DCA 2001). It appears from my examination of A.C. that the court took into consideration the amended statutes, including section 39.806(2).