#24823-a-PER CURIAM
**2008 SD 92**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

THE PEOPLE OF THE STATE OF SOUTH DAKOTA
IN THE INTEREST OF D.A.J.,
ABUSED OR NEGLECTED CHILD,

AND CONCERNING O.J., RESPONDENT.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *

HONORABLE TONY L. PORTRA
Judge

* * * *

RANDALL B. TURNER
Aberdeen, South Dakota                          Attorney for appellant father.

LAWRENCE E. LONG
Attorney General

JEREMY D. LUND
Assistant Attorney General                      Attorneys for appellee
Pierre, South Dakota                            State of South Dakota.

* * * *

CONSIDERED ON BRIEFS
SEPTEMBER 18, 2008

OPINION FILED 10/1/08

#24823

PER CURIAM

[¶1.]      O.J. (father) appeals the denial of a motion for a continuance of an adjudicatory hearing in abuse and neglect proceedings relating to D.A.J., his nine-year-old son (child).  Father also appeals child's adjudication as an abused and neglected child.  We affirm.

FACTS

[¶2.]      Father and child lived in Aberdeen, South Dakota.  The parental rights of child's mother had been previously terminated and were not at issue in these abuse and neglect proceedings.

[¶3.]      Father was in poor health and had a girlfriend who helped provide care for child.  On May 13, 2007, father introduced child to child's mother who lived only a few blocks away from father's girlfriend.   Father instructed child not to visit his mother's house without supervision.  The next day, child was at the home of father's girlfriend playing with neighbors and the girlfriend left to run an errand.  When she returned, child was not in the home and could not be located.  The girlfriend suspected child had gone to his mother's house and phoned father, asking him to call the mother to see if child was at her house.  Instead, father went to the mother's residence where he found child.

[¶4.]      Father slapped child, told him to get in his car and drove child to his residence.  Father had child go into a bedroom and disrobe while father found a stick or switch measuring one and one-half to two feet in length.  Father then used the switch to beat his naked child on his arms, legs, and back.  The beating left a number of bruises, welts and slash-marks on child's body.  At some point during or after the beating, child, who was crying and screaming, called father's girlfriend.  The

girlfriend immediately went to father's house and managed to retrieve child despite father's efforts to stop her. The girlfriend then reported the incident to law enforcement and child was taken into protective custody.

[¶5.] A petition alleging abuse and neglect of child was filed on May 16, 2007. On January 17, 2008, notice was issued for an adjudicatory hearing to take place on February 25. Father moved for a continuance of the adjudicatory hearing, alleging that criminal charges relating to the abuse and neglect case had been filed against him and that he would be requesting a trial in the criminal case. Father also alleged that any testimony he provided in the abuse and neglect case would be used against him in the criminal case and claimed this would violate his constitutional right against self-incrimination.

[¶6.] The trial court denied father's motion for a continuance and the adjudicatory hearing was held as scheduled on February 25. Father did not testify during the hearing. After the hearing, the trial court entered findings of fact, conclusions of law, and an order holding that child was abused and neglected. Father sought an intermediate appeal from the denial of his motion for a continuance and from the adjudicatory order which this Court granted.

ISSUE ONE

[¶7.] **Whether the trial court abused its discretion in denying Father's motion for a continuance.**

[¶8.] "A trial court's decision to grant or deny a continuance is reviewed under an abuse of discretion standard. 'An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.'" State v. Beckley, 2007 SD 122, ¶ 20, 742 NW2d 841, 847 (citations

#24823

omitted).  Father argues the trial court abused its discretion in denying his motion

for a continuance because it deprived him of the ability to testify at the adjudicatory

hearing without the risk of incriminating himself before his criminal trial.

[¶9.]      A similar argument was presented to the New York Supreme Court in

*Matter of Germaine B.*, 447 NYS2d 448 (NyAppDiv 1982).  In that case, parents

sought a continuance of civil child abuse proceedings involving two of their children

pending the outcome of manslaughter charges filed against them in connection with

the death of a third child.  As in this case, the parents argued that their

constitutionally protected rights against self-incrimination would be violated if they

were required to go forward with the child abuse proceeding before the trial in the

criminal case.  The New York court held:

> Abundant appellate authority establishes that no violation
> of constitutional rights occurs when a party is required to
> proceed in a civil proceeding before adjudication of related
> criminal charges.  *See* Baxter v. Palmigiano, 425 US 308,
> 96 SCt 1551, 47 LEd2d 810; Diebold v. Civil Serv. Comm'n,
> 8thCir., 611 F2d 697; United States v. White, 5thCir., 589
> F2d 1283; Arthurs v. Stern, 560 F2d 477, *cert. den.*, 434 US
> 1034, 98 SCt 768, 54 LEd2d 782; cf. Marine Midland Bank
> v. John E. Russo Procedure Co., 50 NY2d 31, 427 NYS2d
> 961, 405 NE2d 205.  The situation presented is clearly to
> be distinguished from those in which an automatic penalty
> follows the failure of a witness or party to testify in a
> proceeding. *Cf*. Gardner v. Broderick, 392 US 273, 88 SCt
> 1913, 20 LEd2d 1082; Garrity v. New Jersey 385 US 493,
> 87 SCt 616, 17 LEd2d 562; Spevack v. Klein, 385 US 511,
> 87 SCt 625, 17 LEd2d 574; Lefkowitz v. Cunningham, 431
> US 801, 97 SCt 2132, 53 LEd2d 1.
>
> The question thus is one addressed to the discretion of the
> Family Court, and we are not persuaded under the
> circumstances presented that the denial of the application
> constituted an abuse of discretion.  The Family Court
> clearly had the right to consider the interests of the

> children in an expeditious determination of the child abuse proceedings.
>
> In finding no abuse of discretion under the circumstances presented, we do not intend to minimize the possible disadvantage to those in the position of respondents-appellants in being required to proceed first with a child abuse proceeding intimately related to a pending criminal charge. We also appreciate that a just resolution of the Family Court proceeding might be furthered by the removal of an impediment to relevant testimony by critical witnesses.
>
> Clearly the preferable resolution of the dilemma presented is, when reasonably possible, to try the criminal case so promptly that it would avoid any harmful delay in the determination of the important matters before the Family Court. What is urgently required is the close and active cooperation of the judges in charge of the separate proceedings, the counsel for the varied parties, and the parties themselves.

*Germaine B.*, 447 NYS2d at 449 – 50.

[¶10.]     Florida has developed a similar body of caselaw on this issue. In *C.J. v. Department of Children and Families*, 756 So2d 1108 (FlaDistCtApp 2000), a father claimed the trial court abused its discretion in denying his motion for a continuance of termination of parental rights proceedings pending the outcome of his trial for the murder of a sibling of the child at issue. The Florida court reasoned as follows:

> In determining whether a continuance should be granted under the circumstances presented by this case, the trial court must consider two primary concerns. First and foremost is the best interest of the child, which ordinarily requires a permanent placement at the earliest possible time. The second consideration is affording fairness to the parents involved.
>
> In this case, the father is charged with the first degree murder of another child. Depending on the complexity of the issues and whether the death penalty is involved, this type of case can take anywhere from one to three years to

-4-

be trial ready.  Absent exceptional circumstances, it would be unreasonable to postpone a determination on the termination of parental rights issue for such an excessive period of time.  Accordingly, we cannot conclude that the trial court abused its discretion in denying the requested continuance.  Although C.J. had a trial date for his murder case, trial dates in such cases are often meaningless.  Counsel made no representation that the case was certain to be tried on that day and all indications were to the contrary.  Moreover, T.I.J. had been taken from her parents eight months earlier and was in desperate need of permanent placement.[1]

*Id*. at 1109 – 10 (citations omitted)(footnote added).  *See also* G.C. v. Department of Children and Families, 791 So2d 17, 22 (FlaDistCtApp 2001)(trial court did not deny due process or abuse its discretion in refusing to delay child dependency proceedings pending outcome of collateral criminal proceedings); A.C. v. Department of Children and Families, 798 So2d 32, 35 (FlaDistCtApp 2001)(trial court did not abuse its discretion in denying continuance of termination of parental rights trial pending outcome of criminal charge of aggravated child abuse).

[¶11.]      *A.C. v. Department of Children and Families*, 798 So2d at 32, involved facts very similar to those in this case.  In *A.C.*, the State filed a petition to terminate a mother's parental rights after she punished her twelve-year-old daughter by holding her hand over a hot stove burner, causing second degree burns.  The mother

---

1.    The court also noted in *C.J.* that:

> We can conceive of situations where a brief delay might be perfectly reasonable.  For example, where a parent charged with a crime advises the trial judge that he or she has filed a demand for speedy trial in his or her criminal case and would therefore have to be tried on those charges within sixty days-a first request for a brief continuance to accommodate that schedule might be warranted.

*C.J.*, 756 So2d at 1110, n 1.

was also charged criminally with aggravated child abuse. On appeal from the termination of her parental rights, the mother argued that she should have been granted a continuance of the termination proceedings because she would have been required to invoke her Fifth Amendment privilege at the hearing and could not present a viable defense because of the criminal charge pending against her. Relying on the best interests of the child standard applied in *C.J.*, 756 So2d at 1109 – 1110, the Florida court found no abuse of discretion in the trial court's denial of a continuance and further found the denial was supported by the record.

[¶12.]       Here, by the time of the adjudicatory hearing, abuse and neglect proceedings involving child had been pending for almost a year. At the same time, there was apparently no date set for the criminal trial because father was not scheduled for an arraignment and plea until a month after the adjudicatory hearing.[2] The record gives no indication as to how quickly a criminal trial might have taken place thereafter. Clearly the best interests of the child under these circumstances required prompt resolution of his status. Thus, the trial court correctly proceeded with the adjudicatory hearing at the scheduled time and appropriately denied father's request for a continuance and further delay of the matter. Based upon the authorities cited above, there was no abuse of discretion by the trial court in its decision in this regard.

---

2.      In seeking a continuance of the adjudicatory hearing, father averred that previous continuances were granted in both the abuse and neglect case and the criminal case because of his "substantial medical issues." However, the record provides little additional information on the nature of his health problems and how they related to the delay in both cases.

ISSUE TWO

[¶13.] **Whether the trial court was clearly erroneous in finding that child was abused and neglected.**

> Whether a child is abused and neglected is a question of fact that the State must prove by clear and convincing evidence. The trial court's findings of fact are subject to the clearly erroneous standard, and will not be set aside unless "we are left with a definite and firm conviction that a mistake has been made." We will give due regard to the trial court's opportunity to judge the credibility of witnesses.

People ex rel. C.F., 2005 SD 126, ¶ 17, 708 NW2d 313, 316 – 17 (citations omitted).

[¶14.] The trial court entered the following finding that child was abused and neglected:

> The court finds by clear and convincing evidence that the above-named minor child is an abused and neglected child through the actions or inactions of [father] within the meaning of SDCL 26-8A-2, based on the following: the testimony of the child and other witnesses to [father] striking or whipping the child with a stick and causing injuries, and pictures of the injuries caused by the strikes.

[¶15.] Father argues this finding is clearly erroneous because he was deprived of the opportunity to testify at the adjudicatory hearing and explain that his discipline of child was reasonable in manner and moderate in degree under SDCL 22-18-5:

> To use or attempt to use or offer to use force upon or toward the person of another is not unlawful if committed by a parent or the authorized agent of any parent, or by any guardian, teacher, or other school official, in the exercise of a lawful authority to restrain or correct the child, pupil, or ward and if restraint or correction has been rendered necessary by the misconduct of the child, pupil, or ward, or by the child's refusal to obey the lawful command of such parent, or authorized agent, guardian, teacher, or

> other school official, *and the force used is reasonable in manner and moderate in degree.*

(Emphasis added).

[¶16.] The argument as to denial of father's ability to testify at the adjudicatory hearing is resolved by the analysis under the first issue. Absent father's testimony at the adjudicatory hearing, the only source for his defense under SDCL 22-18-5 was the closing argument of his counsel who contended that father punished child in the manner he felt was reasonable given the situation.

[¶17.] Despite counsel's argument, the trial court entered no written findings of fact as to the reasonableness of father's use of force under SDCL 22-18-5. This is clearly preferred when SDCL 22-18-5 is raised as a defense in an abuse and neglect proceeding. *See e.g. C.F.*, 2005 SD 126, ¶ 24, 708 NW2d at 318 (for analysis of trial court's findings of fact relating to reasonableness of parent's use of force in abuse and neglect case premised on excessive discipline of child). However, father filed no objections claiming an omission in the trial court's findings nor did he file proposed findings of fact and conclusions of law of his own asserting that his use of force on child was reasonable in manner and moderate in degree under SDCL 22-18-5. Thus, this issue was not preserved for appeal. *See* Stemper v. Stemper, 415 NW2d 159, 160 (SD 1987)(claim or theory not mentioned in proposed findings is deemed abandoned).

[¶18.] Even if the issue of reasonable use of force under SDCL 22-18-5 were preserved for appeal, we note that the trial court did address it in its oral findings

at the close of the adjudicatory hearing.[3]  In that regard, the court stated:

> After listening to the evidence presented today as well as the arguments of counsel, I find that [child] is an abused or neglected child.  The testimony, to me, from [child] and the supporting witnesses is very convincing that he was whipped with a stick or a switch, whatever term you want to give to it.  It was unreasonable punishment in nature and in degree.  This wasn't an instance of a child getting a swat on the behind with an open hand.  This was a whipping.  And neither [father's] illness nor the fact that [his girlfriend] had indicated [child] needed to be punished are any excuse for the type of conduct that occurred.

[¶19.]　　　　These findings are supported by the photographic evidence in the record.  That evidence establishes that the discipline father administered to child went far beyond a quick swat on a bare behind.  Rather, the photos make clear that father repeatedly beat child's back, legs, and arms with a switch until he left numerous scars and welts covering child's body.  This could not be excused as simple restraint or correction of child.  Thus, the trial court was neither erroneous nor clearly erroneous in finding the punishment unreasonable in manner and degree and that child was abused and neglected.

[¶20.]　　　　Affirmed.

[¶21.]　　　　GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.

---

3.　　　Oral findings may be referenced to clarify a trial court's written findings if there is no discrepancy.  *See* Rel v. Douglas County Civil Service Commission, 581 P2d 1090, 1092 n 3 (WashCtApp 1978)(trial court's oral statements may be used to clarify its written findings); Federal Land Bank of St. Paul v. Lillehaugen, 404 NW2d 452, 454 (ND 1987)(trial court's written findings of fact prevail when a discrepancy exists between those findings and the court's prior memorandum opinion or oral ruling).