#25665-a-SLZ

**2011 S.D. 81**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF M.V.,
ALLEGED ABUSED/NEGLECTED CHILD.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE GENE PAUL KEAN
Retired Circuit Judge

* * * *

MARTY J. JACKLEY
Attorney General

JEREMY D. LUND
Special Assistant Attorney General
Department of Social Services
Pierre, South Dakota                        Attorneys for petitioner and
                                            appellee State of South
                                            Dakota.


MARK KADI of
Minnehaha County Office
  of the Public Advocate
Sioux Falls, South Dakota                   Attorneys for respondent
                                            and appellant Mother Y.Z.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 03, 2011

OPINION FILED **12/07/11**

#25665

ZINTER, Justice

[¶1.]        A one-month old child was taken to the hospital in critical condition after the child's father called emergency services.  The father was caring for the child while the child's mother was at work.  Doctors determined that the child's injuries were consistent with non-accidental trauma, and they reported the case as potential child abuse.  The State took custody of the child and started an abuse and neglect proceeding.  Months later, the child was adjudicated abused or neglected.  Following a period of State supervision, the child was returned to his mother and the case was dismissed.  Mother appeals multiple rulings made during the abuse and neglect proceeding.  We affirm.

*Facts and Procedural History*

[¶2.]        M.V. (Child) was born in August 2008.  Other than a bit of jaundice and an eye infection that cleared up, Child was a healthy baby.  Y.Z. (Mother) stayed home with Child for the first month, but returned to work part-time as a research physician at Sanford Hospital.  At that point, U.V. (Father), who was a stay-at-home father, became Child's primary caretaker while Mother worked.

[¶3.]        On October 1, 2008, Father pointed out red marks on Child.  He called them allergies, but Mother told Father the marks were bruises.  Father thought he was possibly holding Child too tight or that the bruises occurred when he was holding Child while working on his computer.

[¶4.]        The next day, Mother fed Child in the morning, went to work as usual, and came home for lunch around 11:15 a.m.  Around 2 p.m., Mother left Child in Father's care and returned to work.  At point Child had suffered no injuries.

#25665

[¶5.]     Later that afternoon, Father called for emergency services, and law enforcement responded. The officers found Father holding Child, who was gasping for air. Mother was not present. An officer placed Child on the ground while continuing to support Child's head, neck, and back to ensure that Child continued to breathe. Within a short time, an ambulance arrived. An oxygen mask was placed on Child's face. An officer carried Child to the ambulance where Child was placed on a cot.

[¶6.]     On the way to the hospital, Child was intubated by ambulance technicians. Child was turned over to medical personnel for treatment at the hospital. Dr. Robert Cheatham observed bruising in the pattern of a human hand. Dr. Cheatham also observed subdural and subarachnoid hemorrhages, massive cerebral edema, and respiratory failure, all of which was noted as being consistent with Child having been shaken. Dr. Nancy Free observed Child's injuries and concluded that Child sustained non-accidental trauma. From observing Child's CAT scans and history, Dr. Susan Duffek, a pediatric radiologist, also determined that Child suffered from non-accidental trauma.

[¶7.]     Later that night, officers were called back to the hospital. The officer that had earlier accompanied Child to the hospital now observed injuries that she had not seen before: multiple bruises and a swollen-shut right eye. Dr. Free reported that the Child's injuries were consistent with child abuse. Dr. Free opined that the pattern bruising on Child's extremities was consistent with a circumferential squeeze by an adult hand and that the linear bruising on Child's shoulder was consistent with Child being pushed or thrown against an object or

something being pulled against Child's skin.  Dr. Free also noted bruises on Child's face.  Considering the bruising, subdural bleeding and extensive brain swelling, Dr. Free diagnosed non-accidental, abusive head trauma.  Dr. Free noted that Child was only one month old and was not capable of moving and bruising himself in the manner observed.[1]

[¶8.]         Child was taken into temporary custody by the State.  In October 2008, the State filed a petition alleging that Child was an abused or neglected child.  In early 2009, Child was placed with Mother for trial reunification.  An adjudicatory hearing was held in April 2009.  Mother argued that Child was not abused or neglected.  In the alternative, Mother argued that the court should make separate findings for Mother and Father, and the findings should indicate that Mother was not at fault.  The circuit court found Child to be abused or neglected under SDCL 26-8A-2 subsection (1) (a child subject to mistreatment or abuse) and subsection (3) (a child whose environment is injurious to the child's welfare) but not under subsection (5) (a child who is without proper care through no fault of the child's parent).[2]

---

1.    Dr. Bonnie Bunch testified at the adjudicatory hearing.  She agreed with the diagnosis that all of Child's injuries indicated this was non-accidental trauma.

2.    SDCL 26-8A-2 provides in relevant part:

> In this chapter and chapter 26-7A, the term, abused or neglected child, means a child:
> (1) Whose parent, guardian, or custodian has abandoned the child or has subjected the child to mistreatment or abuse;
> . . .

<span style="float:right">(continued . . .)</span>

[¶9.]    The court dismissed the abuse and neglect action as to Mother on May 5, 2010, and restored legal custody to Mother subject to a six-month protective period of supervision.  The court did not dismiss the case as to Father because criminal charges of aggravated assault and abuse or cruelty to a minor were still pending.  On July 30, 2010, Father was acquitted of the criminal charges.  A month later, the State moved to dismiss the abuse and neglect action because the State had provided all the assistance it could and it had no further reason to stay involved.  The court subsequently dismissed the abuse and neglect action as to Father.

[¶10.]    Mother raises six issues on appeal.  Three of those issues do not merit discussion.  We address the following questions:

1.    Whether the circuit court erred in declining to make separate findings regarding Mother's and Father's culpability.

2.    Whether the circuit court clearly erred in finding Child abused or neglected.

3.    Whether the circuit court erred in declining to alternatively find that Child was abused or neglected under SDCL 26-8A-2(5).

*Decision*

[¶11.]    Mother argues that South Dakota's Rules of Civil Procedure required the circuit court to make separate findings of fact regarding Mother's role in any

---

(. . . continued)

(3) Whose environment is injurious to the child's welfare;
. . .
(5) Who is homeless, without proper care, or not domiciled with the child's parent, guardian, or custodian through no fault of the child's parent, guardian, or custodian; . . . .

abuse or neglect of Child. The Rules of Civil Procedure in SDCL chapter 15-6 apply to adjudicatory hearings except as otherwise provided. SDCL 26-7A-56. Under the Rules of Civil Procedure, a circuit court is required to make findings on all disputed issues of material fact. *DeHaven v. Hall*, 2008 S.D. 57, ¶ 38, 753 N.W.2d 429, 441. However, a fact is not material unless it affects the outcome of the suit. *Fin-Ag, Inc. v. Pipestone Livestock Auction Mkt., Inc.*, 2008 S.D. 48, ¶ 21 n.13, 754 N.W.2d 29, 40 n.13. Therefore, there is no obligation to make findings on issues not necessary to a determination of the action. *Davies v. Toms*, 75 S.D. 273, 281, 63 N.W.2d 406, 410 (1954).

[¶12.] In this case, the only issue necessary to determine the action was the status of the child, i.e., whether Child was abused or neglected under SDCL 26-8A-2. An "[a]djudication of a child as an abused or neglected child is an adjudication of the status or condition of the child who is the subject of the proceedings and is not necessarily an adjudication against or in favor of any particular parent, guardian, or custodian of the child." SDCL 26-8A-1. Therefore, specific findings regarding Mother's culpability were not necessary to adjudicate Child's abused or neglected status.

[¶13.] Mother, however, argues that she was prejudiced by the court's failure to make separate findings. Mother points out that an adjudication of abuse or neglect constituted grounds for placement of her name on the central registry for child abuse or neglect. *See* ARSD 67:14:39:03(2) (providing that a person's name shall be placed on the central registry if there "is a court finding of abuse or neglect"). Mother contends that placement of her name on the registry jeopardizes

her job as a research physician at Sanford Hospital because placement on the registry prevents employment in any institution like Sanford that "receive[s] children for care" or "provides care for mothers and their children." *See* SDCL 26-6-1; SDCL 26-6-14.11.

[¶14.]     As previously noted, however, an abuse and neglect adjudication involves the status of children, not their mothers or fathers. Furthermore, if Mother is improperly placed on the child abuse registry, that placement will occur by act of the Department of Social Services. Therefore, Mother's remedy is with the Department rather than the juvenile court that is adjudicating the status of the child.[3] Because specific findings regarding Mother's role in the abuse or neglect were not necessarily required to adjudicate Child's status, the circuit court did not err in declining to make separate findings regarding Mother's relative role in the abuse or neglect.

[¶15.]     Mother next argues that the circuit court clearly erred in finding that Child was abused or neglected. Whether a child has been abused or neglected is a question of fact that is reviewed for clear error. *People ex rel. D.A.J.*, 2008 S.D. 92, ¶ 13, 757 N.W.2d 70, 74. We will not set aside such findings unless "we are left with a definite and firm conviction that a mistake has been made." *Id.* This Court "give[s] due regard to the [circuit] court's opportunity to judge the credibility of witnesses." *Id.*

---

3.     Indeed, Mother's reply brief reflects that Mother initiated administrative proceedings with the Department of Social Services to remove her name from the central registry. It further appears that her name was removed and the administrative matter was dismissed without prejudice pending the outcome of this appeal.

[¶16.]     Mother contends that Child's injuries were inflicted by law enforcement officers, ambulance technicians, or medical personnel treating Child. The circuit court, however, found that Child was injured prior to the emergency response and the medical treatment. The evidence supports that finding. Dr. Duffek testified that Child's hemorrhaging could not have been caused by a lack of oxygen due to improper intubation by emergency medical personnel. Moreover, Mother cites no medical testimony or other evidence even suggesting that the pattern bruising, bleeding, and swelling of the brain could all be the result of emergency medical treatment.

[¶17.]     On the contrary, Dr. Cheatham, Dr. Free, Dr. Duffek, and Dr. Bunch all diagnosed Child's injuries as being consistent with non-accidental injury. Dr. Cheatham and Dr. Free testified that the bruising was in the pattern of a human hand. Dr. Free testified that the linear bruising was consistent with Child being pushed or thrown against an object or something being pulled against Child's skin. All four doctors indicated the swelling and bleeding in Child's brain was evidence of non-accidental trauma. Finally, there was evidence that the pattern and amount of bleeding could only have been caused by some type of violent action, such as violent shaking or a high-speed motor-vehicle accident. Considering all the evidence, the circuit court did not clearly err in finding that Child was abused or neglected.

[¶18.]     Mother finally argues that the circuit court erred in failing to alternatively find that Child was abused or neglected under SDCL 26-8A-2(5). The circuit court found that Child was abused or neglected under SDCL 26-8A-2(1) and (3). The court made no finding with respect to SDCL 26-8A-2(5). We have

previously held that proof of any one of the subsections of the abuse and neglect statute standing alone is sufficient to sustain adjudication of abuse or neglect. *See In re S.L.*, 419 N.W.2d 689, 693 (S.D. 1988) (construing the predecessor statute, SDCL 26-8-6). Because the court found that Child was abused or neglected under SDCL 26-8A-2(1) (mistreatment or abuse) and SDCL 26-8A-2(3) (injurious environment), the court was not required to make additional findings under SDCL 26-8A-2(5) (whether Child was without proper care through no fault of the Child's parent).

[¶19.]       Affirmed.

[¶20.]       GILBERTSON, Chief Justice, and KONENKAMP and WILBUR, Justices, concur.

[¶21.]       SEVERSON, Justice deeming himself disqualified, did not participate.