GREEN, J.
(dissenting).
Under the facts and circumstances of this case, I simply cannot find the trial court’s refusal to continue the trial terminating the appellant/mother’s parental rights to be an abuse of discretion. For that reason, I would affirm.
This case was filed in the dependency court in 1997. Since that time, the State has taken the children into custody but later reunified the mother with the children on several occasions. On the last such occasion, the mother and children were reunited on a Friday, but the mother was arrested and incarcerated on the following Monday in the federal penal system on a parole violation. It is significant to note that the mother’s trial counsel below has also represented the mother in the dependency proceedings for at least two years prior to her arrest and she was therefore very familiar with him. Despite this fact, she made no efforts whatsoever to contact her trial counsel after her arrest to apprise him of her whereabouts in the federal penal system or inquire about the status of her children in the state dependency .proceedings.[1]
On January 17, 2002, a termination of parental rights petition was filed against the mother on the grounds of abandonment and case plan non-compliance under section 39.806(l)(e), Florida Statutes (2001), and noted that the mother was incarcerated. Prior to the commencement of this trial, this case was continued twice on the grounds that the mother could not be located in federal custody. Both the mother’s counsel and the appellee made efforts to locate the mother in the federal penal system[2] prior to the trial but were unsuccessful. The only information conveyed by the authorities in the federal penal system regarding the mother’s *736 whereabouts stated that she was “in transit.”[3] The trial court continued the trial twice on the grounds that the mother’s whereabouts in federal prison remained unknown.
Finally, on October 8, 2002, the trial commenced in this cause over the defense’s- objection that the mother still had not been located. In denying the defense’s motion for yet another continuance, the trial court agreed to a procedure which attempted to maintain a balance between the due process rights of the mother and the need of the children for permanent placement. The trial court decided to proceed with the trial, but not rule on the same until after the mother’s counsel- was given a specified amount of additional time within which to get a transcript of the trial and attempt to contact the mother. Thereafter, if the mother wished to be heard by telephone or-any other means, the trial court agreed to hear from her prior to ruling on this case. The majority’s assertion to the contrary is' simply wrong. See Maj. Op. at 734.[4]
Approximately one month later, on November 18, 2002, the trial was still pending. The mother’s counsel informed the trial court that he had located the mother in a correctional facility in Tallahassee by using the corrections website that morning. Because thé federal authorities do not transport their inmates to civil state court proceedings such as the terminations proceeding below, the trial court made arrangements with the federal correctional facility to permit the mother to participate telephonieally - in .the proceeding for approximately two hours. The trial court also permitted the mother’s counsel to speak privately to the mother during, the morning- hours' of the proceeding for approximately twenty minutes and during the afternoon hours of the proceeding for approximately twenty ■ minutes. After speaking to the mother, the defense counsel declined to present the mother’s testimony telephonieally based upon his asserted inability to adequately prepare her. On April 23, 2003, the trial court entered its Final Order terminating the mother’s parental rights, and this appeal followed.
The mother essentially asserts that her due ‘process rights were violated when she was given only two twénty-minute telephonic communications with her counsel to prepare and defend this termination proceeding. Under ideal circumstances, no one would dare disagree with her. No one can disagree, however, that the circumstances presented in this case are less than ideal as well. Through no fault of the trial court, .appellee or defense counsel, the mother was unable to be physically present at the trial of this cause. She was only able to be- present telephonieally at the latter stage of the proceedings. The trial court was faced with the dilemma of con- *737 turning this trial still further with the very strong possibility that the mother might not be locatable in the federal penal system at the time of the next hearing[5] or permitting the mother’s input, albeit limited, at the final hearing on November 18, 2002. The trial court’s decision not to continue this proceeding still further under such circumstances cannot be deemed an abuse of discretion particularly where the overwhelming evidence established by clear and convincing proof adduced by the appellee supports the Final Order terminating the mother’s parental rights. See Gore v. State, 599 So.2d 978, 984 (Fla.1992); C.J. v. Dep’t of Children & Families, 756 So.2d 1108, 1109 (Fla. 3d DCA 2000); see also F.A.F. v. Dep’t of Children & Family Servs., 804 So.2d 616 (Fla. 3d DCA 2002); T.C. v. Dep’t of Health & Rehab. Servs., 681 So.2d 893 (Fla. 4th DCA 1996). As I see it, a retrial of this ease is an exercise in futility and only prolongs and/or frustrates the appellee’s ability to secure adequate permanent placement for the minor children at issue in this case.

. Thus, contrary to the majority’s assertion, I do believe that this is precisely a case where the mother neglected this proceeding in part.

. Indeed, the mother’s attorney’s Herculean efforts in this regard included writing letters *736 to the President of the United-States and his brother, the Governor of the State of Florida,seeking assistance.

. Even this limited information was gleaned from, an internet web search of a federal corrections database. ,

. The court: What I am going to do is deny Mr. Metcalfe's motion for continuance at the moment and I am going to try the case. I am not going to rule on the case, b.ut I am going to give Mr. Metcalfe X amount of time to get a transcript and to contact his client if he can, and if she wishes to be heard by telephone or any other means, I will hear from her prior to ruling on the case. . ,
I must confess to you that this is not my original idea, I understand it’s one that Judge Lederman uses sometimes in the same situation, and it sounds to me to be eminently fair. But it is far more unfair to deny these children permanency ad infinitum. This woman has her obligations as well, and I commend counsel, I think that the one thing that’s stipulated is that everyone has tried everything they can to locate her and haven't been able to do so thus far. Does anyone deny that?

. Indeed, on the date of oral argument, the mother’s appellant counsel candidly acknowledged that neither he nor trial counsel knew of the current custodial whereabouts of the mother.